JENSEN LIVESTOCK CO., RESPONDENT, v. CUSTER COUNTY ET AL., APPELLANTS

(No. 8,300.)

(Submitted March 30, 1942. Decided April 21, 1942.)

[124 Pac. (2d) 1013.]

*Mr. Hugh J. Lemire,* for Appellants, submitted a brief and. argued the cause orally.

*Mr. W. B. Leavitt,* for Respondent, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

The defendants appeal from a judgment rendered against them and in favor of the plaintiff Jensen Livestock Company in a quiet title action in which the complaint was in the usual form. The defendants, Custer county and its county commissioners, answered and filed a cross-complaint in which they showed the acquisition by the county of a tax deed to the property in question, setting forth a copy of the deed as an exhibit,. and detailing the proceedings leading up to its issuance. By amended reply and answer to the cross-complaint, plaintiff raised the two issues hereinafter discussed, and offered to pay the delinquent taxes.

The learned trial judge made findings of fact and conclusions. of law in plaintiff's favor upon both issues and rendered a decree quieting plaintiff's title, with the proviso that the delinquent taxes should be paid on or before a certain date, or in case of appeal and affirmance within thirty days after remittitur.

It is agreed that the county holds whatever title the tax deed.

confers. The two defendants Andrew Odegaard and Bradshaw Land and Livestock Company filed answers which are not before us, but it is agreed that their rights depend entirely upon the validity of the county's tax title.

The necessary fact statement is brief: William H. Jensen was the owner of the land in 1931, and in 1932 the plaintiff acquired the property by a deed from Jensen and his wife which was immediately recorded, and has never conveyed the property. The tax sale was held on July 21, 1931, and no purchaser appearing at the sale the property was struck off to the county on the same day. It had been assessed and offered for sale in four separate tracts and all four tracts, together with two others which have subsequently been redeemed, were included in one tax sale certificate in which is the following recital:

"That there was no purchaser in good faith for said property as provided by law on the day that the property was offered for sale as aforesaid, and no person or purchaser offered to take said property and pay such taxes, costs and charges, and that thereupon the undersigned county treasurer of Custer County struck off the whole amount of the property assessed as aforesaid, to Custer County, Montana, as the purchaser thereof and a duplicate certificate of sale issued pursuant to law."

In 1939, when it was decided to apply for tax deeds upon delinquent property, four separate notices were served and four sets of notices and affidavits were filed in the county clerk's office and also in the county treasurer's office, and one deed was taken upon plaintiff's failure to redeem.

The notices and affidavits with regard to the four tracts are virtually identical. Each notice was directed to the plaintiff as owner and to other persons not parties here. The notices were prepared on printed forms on the reverse of which were affidavit forms to be executed by the county clerk stating the name and post office address of the owner, and showing that he had made service of notice upon the owner and other interested parties by registered mail, and had caused personal service to be made by the sheriff upon "the person occupying the prop-

erty," and had caused notice to be served by publication on any interested person whose post office address was unknown. In each instance these affidavits stated that "the owner * * * is Jensen Livestock Company" but in the portion of the affidavit form relating to personal service by the sheriff upon the occupant the word "occupying" was stricken and the word "owning" inserted, so that the statement is that affiant caused personal service to be made by the sheriff "upon Mrs. W. H. Jensen, the person owning the property." Annexed to the notices and affidavits were the publisher's affidavits of publication, and also the sheriff's affidavits showing service upon "Mrs. W. H. Jensen who is the owner," etc., the word "occupant" preceding the word "owner" in the printed form having been stricken out. The affidavits made no reference whatever to the occupancy or the occupants of the land.

These notices and affidavits were filed in the county clerk's office on March 12, 1940, and executed duplicates were presented to the county treasurer and filed in his office on the same day, with applications by the county clerk for the issuance of a tax deed to the county; and the tax deed was issued on March 15, 1940, and filed for record in the county clerk's office five days later. Annexed to each set of notices and affidavits as filed in the county clerk's office, but not as presented to the county treasurer, was a postal registry return card indicating the receipt of some unidentified registered article by William H. Jensen, as agent of Jensen Livestock Company, to which it had apparently been addressed; but nowhere in the affidavit, or even in the testimony at the trial, is there anything to show that the registered article was the notice in question. William H. Jensen testified at the trial that he was an incorporator and officer of plaintiff corporation and answered affirmatively the question, "You have been the occupants of the land since then?"

Only two questions are presented, both going to the validity of the tax deed. One involves the validity of the 1931 tax sales and the tax sale certificate; the other involves the sufficiency of

service and proof of service of the notice given of the application for the tax deed.

The first question is whether the tax sale certificate is void ■■ because of its issuance to the county on the same day on which the property was offered at public tax sale. The contention is, not that the county became a competitive bidder at the sale, which of course it had no right to do (*Rush* v. *Lewis and Clark County*, 36 Mont. 566, 93 Pac. 943; Id., 37 Mont. 240, 95 Pac. 836), but only that it was necessary to wait until the next day after the sale before taking the tax sale certificate.

The question is the meaning of section 2191, Revised Codes 1921, as amended by Chapter 46, Laws 1923, and by Chapter 31, Laws 1929 (now section 2191, Revised Codes 1935). Prior to the 1929 amendment it provided ''in case there is no purchaser in good faith for the same * * * on the first day that the property is offered for sale, then *when the property is offered thereafter for sale and there is no purchaser in good faith for the same,* the whole amount of the property assessed must be struck off to the county as the purchaser,'' etc.

As amended in 1929 and effective upon the sale of this property in 1931, this section provided ''in case there is no purchaser in good faith for the same * * * on the first day that the property is offered for sale, then the whole amount of the property assessed must be struck off to the County as the purchaser,'' etc.

In this respect the only change was the elimination of the words appearing above in italics. The word ''thereafter'' clearly had reference to ''the first day'' and prior to the amendment it is clear that the legislature intended that the property should ''thereafter,'' that is, after the first day, be offered again for sale and ''then'' struck off to the county if no bona fide purchaser should appear; and this court therefore necessarily held in *Rush* v. *Lewis and Clark County,* supra, and in *Glacier County* v. *Schlinski,* 90 Mont. 136, 300 Pac. 270, 272, that the sale could not be made to the county on the first day.

The plaintiff argues that by still retaining, upon the 1929

amendment of section 2191, the words "on the first day that the property is offered for sale," the legislature must have intended that the county should still wait until some subsequent day before taking the certificate. The contention is, and the trial court held, that the amendment did not remove the necessity of waiting until a subsequent day before striking the property off to the county, but that it removed only the necessity of another public offering on a subsequent day before so doing. However, since the matter repealed was the only reference to any time subsequent to the day of sale, and its existence was the only circumstance requiring any delay at all after the sale, its repeal completely eliminated any reason for waiting any time at all after the first public sale without finding a cash buyer. Consequently by eliminating that reference, the legislature eliminated all necessity for waiting until a subsequent day. If the retention of the words "on the first day that the property is offered for sale" had any significance it could only be that there was to be a second day on which the property should be offered for sale, which is not permissible in view of the repeal of the only words so requiring. It seems to be an unavoidable conclusion that the failure to repeal the reference to "the *first* day that the property is offered for sale" is the result of an oversight, since the repeal of the other words leaves it without significance.

Plaintiff construes the words "in case there is no purchaser * * * on the first day that the property is offered for sale" to mean that purchasers should have the entire day in which to appear, and that for that reason the county must wait until a subsequent day. But if that were so, before the 1929 amendment it would have been necessary for the county to hold the sale during the entire second day, and not to take the certificate until the third day, which has apparently never even been suggested and is inconsistent with the decision in *Glacier County* v. *Schlinski,* as hereinafter shown. Furthermore, that interpretation is not permissible for the reason that the statute does not provide that the sale should be held open all day. Section 2189,

Revised Codes, provides that at the time of which notice has been given, which must be between ten in the morning and three in the afternoon, the county treasurer "must commence the sale of the property advertised, commencing at the head of the list [meaning apparently the list of tax delinquent property required by section 2182, Rev. Codes], and *continuing* in alphabetical or numerical order of lots and blocks *until completed.*" These words can only mean that the sale is over when the treasurer has run through the list, and not that it continues for the entire day. Obviously, therefore, there is no point in waiting any longer for purchasers after the sale has been completed, and there is no reason why effect should not be given to the legislative proviso that "then the whole amount of the property assessed must be struck off to the County" without waiting for a subsequent day or for the close of that day.

This court said in *Glacier County* v. *Schlinski*, supra, with reference to a tax sale held prior to the 1929 amendment of section 2191: "The provision of section 2191, above, is interpreted to require an offer of the property on the first day of sale, *and, if no bid is made therefor, a second offer on a subsequent day,* when, if *again* there is no bidder present who will make an offer for the property, and then only, must the property be struck off to the county."

With reference to tax sales after its effective date, the 1929 amendment requires the elimination from the above quotation of only the words shown above in italics, although it is still the law that the county may not be a competitive bidder. Thus it is no longer the law that property may not be struck off to the county on the day of the tax sale if no purchaser has appeared at the sale. Consequently there is no reason for waiting until the following day. The tax sale certificate is not open to the objection raised by the plaintiff, and we must hold for the appellant on this question.

We come then to the second question, whether the service of the notices, and the affidavits thereof, were sufficient to empower the treasurer to issue the tax deed. The defect urged

is that the showing is entirely silent with reference to whether the land was occupied, and if so, whether service was had upon the occupant.

Section 2209, Revised Codes, prescribes the requirements for service of notice of application for tax deed. The section has been amended six times since its original enactment in 1891, which indicates the legislature's substantial concern with the manner in which the notice is to be given. A very brief summary of the enactments may be of assistance in considering the problem before us.

As originally enacted as section 128 of a 206-section Act on the general subject of revenue and taxation, at page 114, Laws of 1891, and as brought into the 1895 Codes as section 3895 of the Political Code, it provided for the service of written notice on the owner *or* upon the occupant, if any, and by posting conspicuously on unoccupied property. In other words, the question whether the property was or was not occupied was very material to the giving of proper notice.

Section 1, Chapter 79, Laws of 1905, amended the section to read as it later appeared as section 2651, Revised Codes of 1907. The most significant change was the substitution of the word "and" for the word "or" in the clause theretofore requiring service upon the owner *or* upon the occupant, so as to make service mandatory on both if the property was occupied. It is not necessary to detail the various amendments effected by section 1, Chapter 33, Laws of 1917; section 1, Chapter 87, Laws of 1921, (sec. 2209, Rev. Codes 1921); section 1, Chapter 156, Laws of 1929, and section 1, Chapter 190, Laws of 1933 (sec. 2209, Rev. Codes 1935), but it should be noted that through all of these changes service upon both the owner and the occupant was required, and that it is therefore still material whether the land is occupied.

While this section originally provided only that the owner should have the right of redemption indefinitely until the statutory notice had been given and the deed applied for, and the right was extended to a mortgage holder by this section only

after the above amendment of 1921, it was originally provided by another section of the same revenue and taxation Act (sec. 122, page 113, Laws of 1891) that redemption might be made "by the owner or any party in interest" and that has been the law ever since, section 2201, Revised Codes 1935, now providing that the redemption may be made "by the owner, or any party having any interest in or lien upon such property." Since the right of each person interested thus continues until the statutory notice is given and the deed applied for, it must be the statutory notice and the subsequent application which cut off the rights of all, even though no direct notice is expressly required to be given all parties in interest. Thus the notice, however given, must be intended to reach all parties in interest, and not merely the owner.

Defendants contend that since service by registered mail was made upon the owner, the plaintiff in this action, "it is inconceivable that the legislature intended that if the owner was properly served, the person occupying the property must also be served, even though the conjunction 'and' is used, for in such case the occupant is not a person entitled to redeem." However, it is not apparent that under any circumstances a person is entitled to redeem merely by reason of being an occupant, or that the service upon him was ever intended only for his personal benefit. Furthermore, as noted above, the provision originally was that the notice be served upon the owner or the occupant. The word "or" was changed to "and" in 1905 and it has been allowed to stand through all the various amendments since that time. Therefore the legislature must have meant what it said in the 1905 amendment. Furthermore it is rather remarkable that up to 1905 the legislature permitted a tax deed to issue upon notice to only the occupant, and it is not to be wondered at that in the amendment of that year "or" was changed to "and" so as to require service upon the owner in any event. Instead of thus requiring service upon both the owner and the occupant, the legislature might well have required service upon the occupant only when the owner could

not be found, which was possibly the intent of the original Act, but if so, instead of amending it to clarify the intention it is apparent that the legislature preferred to amend so as to require service of notice upon both. Furthermore, as noted above, the entire notice, however given, has always been for the benefit of all persons interested and not merely for the benefit of the owner. At any rate, the requirement of service upon both ▪ owner and occupant had been the law for some thirty-five years when the tax deed in question was applied for, and since the statute involves the confiscation of property in ex parte proceedings, the due process requirement necessitates a strict compliance with its provisions as to notice, and the acquisition of knowledge thereof in some other manner is not equivalent to, nor effective as, such notice. (*Kerr* v. *Small,* 112 Mont. 490, 117 Pac. (2d) 271; 61 C. J. 1257, secs. 1718, 1337, 1874; 26 R. C. L. 427, secs. 384, 431, 388.)

Defendants suggest that since notice was given to the owner ▪ by registered mail, the tax deed should be good as to it, even though there might possibly be an occupant as to whom it may not be good. But a tax deed is not derivative, but creates a new title in the nature of an independent grant from the sovereignty, extinguishing all former titles and liens not expressly exempted from its operation. (*State ex rel. City of Great Falls* v. *Jeffries,* 83 Mont. 111, 270 Pac. 638; *State ex rel. Malott* v. *Board of County Commissioners,* 89 Mont. 37, 296 Pac. 1; *Rosebud Land & Improvement Co.* v. *Carterville Irrigation District,* 102 Mont. 465, 58 Pac. (2d) 765.) It is not derived from the fee, but is antagonistic to it and there is no privity between the holder of one and the holder of the other. (*Horsky* v. *McKennan,* 53 Mont. 50, 162 Pac. 376.) Logically, therefore, it cannot be good as to some of the former persons interested and void as to others. Furthermore the treasurer was or was not authorized to issue the deed. It cannot, therefore, be said that he was empowered to issue it as against certain of the parties, although not as against the others. Under the statute his jurisdiction arises solely from the affidavits of service which

are filed with him, and not merely from the fact of service or from his knowledge of it otherwise than through the affidavits.

Section 2212 provides now, and ever since its enactment in ▮▮▮▮ 1891 has provided: "No deed of the property sold at a delinquent tax sale must be issued by the county treasurer * * * to the purchaser of the property, until after such purchaser shall have filed with the treasurer * * * an affidavit showing that the notice hereinbefore required to be given has been given as herein required." In other words, the treasurer has no jurisdiction to issue a tax deed until there has been filed with him "an affidavit showing that the notice hereinbefore required to be given has been given *as herein required,*" etc. (*Cullen* v. *Western Mortgage & Warranty Title Co.,* 47 Mont. 513, 134 Pac. 302; *Galash* v. *Willis,* 90 Mont. 148, 300 Pac. 569; *Sanborn* v. *Lewis and Clark County,* 113 Mont. 1, 120 Pac. (2d) 567.) "In determining the sufficiency of tax title proceedings, the records alone can be considered and defects or omissions may not be corrected or supplied by anything dehors the record." (*Harrington* v. *McLean,* 70 Mont. 51, 223 Pac. 912, 914; *Fariss* v. *Anaconda C. M. Co.,* D. C., 31 Fed. Supp. 571, 576.)

This is necessarily so, since section 2209, after specifying how notices shall be given, provides as follows: "The owner of the property * * * has the right of redemption indefinitely until *such* notice has been given." Certainly "such notice" does not mean "some notice" or "any notice," and neither the county treasurer nor members of the judiciary may substitute their own ideas as to what notice should be considered the equivalent of or substitute for the notice required by the legislature. Since thus the county treasurer's jurisdiction to issue a tax deed must rest upon the affidavits of service required by the legislature to be filed with him, it seems obvious that if the affidavits are silent as to the occupancy of the land, he cannot learn from them whether he is authorized to issue the deed.

In this instance it will be noted that there were four separate tracts to which it was proposed to take tax deed, and nothing

appears in the affidavits as to the occupancy of any tract. The tracts may have been occupied by four separate occupants, or by even more. Part of them may have been occupied and the others unoccupied. In this situation the county treasurer cannot have been able to learn from the affidavits whether he had authority to issue a deed for any one of the tracts.

Defendants argue that as the registry return cards indicate the receipt of registry notice by the plaintiff corporation, through William H. Jensen as its agent, and as Jensen testified at the trial that he was an occupant of the property, the record shows that the occupant was served; but as noted above, the return cards were annexed to the affidavits filed with the county clerk and not to those presented to the treasurer as his sole statutory authority to issue the deed. Furthermore, neither the affidavits nor the evidence in court identified the cards as referring to the notice in question, and the cards therefore have no evidentiary value. Finally, even if they had been so identified, the receipt by William H. Jensen for the corporation would constitute, not service on him personally, but merely knowledge *aliunde* which is universally held insufficient as a substitute for the statutory service on Jensen himself. Consequently, if his testimony that he had been one of the occupants of the land since 1936 could be resorted to, it could only prove that he at least was one occupant who had not been served with notice, and would thus affirmatively disprove the treasurer's jurisdiction to issue the deed. Furthermore, his testimony indicates that there is more than one occupant. It is purely conjectural whether there was only one other occupant and whether that one was Mrs. William H. Jensen, who was served personally by the sheriff. We have no way of knowing that from the entire record, and certainly the treasurer could not know it from the affidavits. Therefore no authority was conferred upon him to issue the tax deed as to any of the land.

It follows from what has been said that in spite of our ruling

upon the question of the validity of the tax sale certificate, the tax deed is void; and the judgment is hereby affirmed.

ASSOCIATE JUSTICES ANGSTMAN, ERICKSON, ANDERSON and MORRIS concur.