STATE, CHARLES R. COLWELL AND SARAH R. COLWELL, PROSECUTORS, v. JESSE R. ABBOTT, COLLECTOR, &c.

1. A tract of between three thousand and four thousand acres of woodland, lying in one township, and forming part of the Weymouth estate, upon which the prosecutors resided, in another township, held to be, for the purposes of taxation, *unoccupied* land, and assessable to the prosecutors in the township where it was located.

2. Unless there is such an occupation or possession of land as will enable the tenant or possessor, without the aid of a paper title, to maintain an action for trespass upon it, such land cannot be said to be *occupied*, in the sense of Section 6 of the tax law of 1866. *Rev., p.* 1152.

3. The general policy of our law with respect to the taxation of real estate is expressed in the provision that all lands shall be assessed in the township, &c., in which they are situate. The single exception is in the case of occupied land divided by a township, ward or county line. The property to be assessed, whatever may be its character, whether a cultivated farm or a tract of wild land, is to be taken and valued in the actual condition in which the owner holds it.

5. If held as a farm or as an entire tract, the question is not, what would this or that part of it sell for if separated from the rest, but what would the property as it is—as the owner actually holds it in that taxing district—sell for at a fair private sale?

---

On *certiorari*. In matter of assessment.

Argued at November Term, 1879, before Justices REED and WOODHULL.

For the prosecutors, *S. H. Grey.*

For the defendant, *A. C. Scovel.*

The opinion of the court was delivered by

WOODHULL, J. The prosecutors were assessed, for the year 1876, in the township of Mullica and also in the township of Hamilton, for thirty-eight hundred and ten acres of land situate in the township of Mullica, and forming a part of the Weymouth estate, upon which the prosecutors resided, in the township of Hamilton, in the county of Atlantic. The entire tract contains about fifty thousand acres, not far from one-half lying in the townships of Hamilton and Mullica. One thousand acres—forty of which are in Mullica and the rest in Hamilton—are improved and cultivated. The other forty-nine thousand acres are wild and uncultivated lands.

The forty acres of improved land in Mullica formed a part of the farm of one thousand acres upon which the prosecutors resided, at Weymouth, in the township of Hamilton.

It follows from the decision in *State, Tallman, pros.*, v. *Britton, ante p.* 103, that the prosecutors were improperly assessed in Mullica for the forty acres of improved land lying in that township.

The one thousand acres being used and cultivated by the prosecutors living in Hamilton, the entire tract, on both sides of the township line, should have been assessed to them in Hamilton, where they resided.

It is urged on the part of the prosecutors, that the same rule should be applied to the unimproved lands in the township of Mullica.

Our present tax law, under which the assessment in question was made, provides that when the line between two townships or wards divides a farm or a lot owned or possessed by the person taxed, the same shall be taxed, if occupied, in the township or ward in which the occupant resides; and if unoccupied, each part shall be assessed to the owner thereof in the township or ward in which the same may be. *Rev., p.* 1152, *pl.* 65, § 6.

If the uncultivated lands in Mullica are *occupied*, in the sense of the act, the assessment for them in Mullica cannot be maintained. If unoccupied, in the sense of the act, they are

rightly assessed to the prosecutors in the township of Mullica, where they are located.   The terms "occupied" and "unoccupied" are found in the tax laws of 1851, 1854 and 1866. *Pamph. L.* 1851, *p.* 272, § 6 ;   *Pamph. L.* 1854, *p.* 297, § 6 ; *Pamph. L.* 1866, *p.* 1080, § 6.   (*Rev., p.* 1152, § 65.)

The word "unoccupied," as used in the act of 1854, is said in State *v.* Hoffman to designate the same kind of land as was described in a previous tax law (*Rev. Stat., p.* 1003; *Nix. Dig.* (*3d ed.*) 846, § 33,) as unimproved or untenanted land, and to mean land having no visible occupant or possessor.   To the same effect is what is said by the court in *State, Cosset, pros.,* v. *Reinhardt,* 2 *Vroom* 218.

It may fairly be inferred, from what was said in these cases, that unless there is such an occupation or possession of land as will enable the tenant or possessor, without the aid of a paper title, to maintain an action for a trespass upon it, such land cannot be said to be *occupied,* within the meaning of the section referred to.

The nature and extent of the use made by the prosecutors of their lands in Mullica appear very clearly in the testimony of Mr. Colwell.

He says :   "There were no buildings or fences on the forty acres of improved lands in Mullica township ; when I speak of improved land, I mean it was reduced to cultivation ; the uncultivated portion of the Weymouth estate was used by us for coalings, wood-clippings, hoop-poling, raising stone and gravel for sale ; we made a few rails and split a few shingles, cut saw-logs and got out a good deal of ship-stuff in 1876."

On cross-examination he says :   "I don't know whether we had any coalings in 1876 in Mullica township ; I don't know that we had any wood chopped in 1876 in Mullica ; I did not have any hoop-poles cut in Mullica in 1876 ; we raised no stone or gravel in Mullica township in 1876 ; we had no rails or shingles cut in Mullica township in 1876 ; I think we had logs cut in Mullica in 1876, perhaps one hundred or two hundred ; if I am right in saying these logs were cut there, some of them were ship-stuff."

While the prosecutors were, beyond question, constructively in possession of the entire Weymouth estate, and naturally regarded themselves as residing upon and occupying the whole of it, they manifestly had no actual, visible possession of the five or six square miles of woodland in the township of Mullica.

This tract, being wild and untenanted, without visible occupant or possessor, was, for the purposes of taxation, unoccupied land, and was properly assessed to the prosecutors in the township in which it was located.

The general policy of our law with respect to the taxation of real estate, is expressed in the provision that all lands shall be assessed in the township, &c., in which they are situate.

The single exception to this rule is in the case of occupied land divided by a township, ward or county line. The wisdom of the rule is strongly illustrated by the circumstances of the present case.

If the wild lands in Mullica are taxable to the prosecutors in Hamilton, so must be, also, all lands of like character belonging to the Weymouth estate, although situated in four different townships. The township of Hamilton would thus draw to itself, from three other townships, the revenue derived from the taxation of some thirty thousand acres of land.

It is not too much to say that such a result would be repugnant alike to the policy and the language of our tax laws, and could never have been intended by the legislature.

The objection that no assessment was authorized to be made by the inhabitants of the township of Mullica, for the year 1876, for any township purpose, is not sustained, for the reasons stated in the case of *State, Wharton, pros., v. Abbott, Collector, ante p.* 109. The last objection to be noticed is, that the lands of the prosecutors were assessed far beyond their full and actual value at the time of the assessment. The amount assessed on the three thousand eight hundred and ten acres in the township of Mullica, for the year 1876, was $44,050. The testimony taken in the cause shows this amount to be greatly in excess of any previous or subse-

School Trustees v. Stocker.

quent valuation of the same property for the purposes of taxation. The duty of the assessor, as prescribed by the statute, and embodied in his official oath, was to value the lands in question at their full and fair value, at such price as in his judgment that property, viz., the tract of three thousand eight hundred and ten acres, taken as a whole, would sell for at a fair and *bona fide* sale, by private contract, on the day prescribed by law for commencing the assessment. *Rev.*, *p.* 1155, *pl.* 71, § 12. The property to be assessed, whatever may be its character, whether a cultivated farm or a tract of wild land, is to be taken and valued in the actual condition in which the owner holds it.

If divided into lots, each lot is of course assessable at its full value in the market.

But if held by the owner as a farm or as an entire tract, the question is not what would this or that part of it sell for, if separated from the rest, but what would the property as it is—as the owner actually holds it—sell for, at a fair private sale?

Estimated upon this basis, the valuation of the tract in question would not, I think, have exceeded the sum of $19,050, or $5 per acre, for the entire tract of three thousand eight hundred and ten acres. Deducting from this amount, $200 for the forty acres not assessable in Mullica, there remains the sum of $18,850, as to which the assessment is affirmed, and as to all the rest, is set aside, with costs.