VAN VOAST, Appellant, *v.* BLAINE COUNTY et al.,
Respondents.
No. 8588
Submitted December 10, 1945. Decided March 19, 1946.
167 Pac. (2d) 563
Rehearing Denied April 16, 1946.

See also 167 Pac. (2d) 572.

Mr. Harry L. Burns, of Chinook, and Mr. Jess L. Angstman,
of Havre, for appellant.

Mr. Oscar C. Hauge, of Havre, and Mr. D. J. Sias, of Chinook, for respondents.

MR. JUSTICE ADAIR, delivered the opinion of the Court.

George H. Sullivan of Stillwater, Minnesota, was the owner of the fee to a half section of improved grazing land in Blaine County, Montana, described as the East One Half (E½) of Section Twenty-five (25), Township Thirty-six (36) North of Range Twenty-six (26), East M. M. The owner failing to pay the taxes, the land was sold on July 16, 1932 to the county of Blaine for the delinquent taxes for the year 1931. There was no redemption from such tax sale and no assignment of the tax sale certificate. By written notice dated April 22, 1939 the county of Blaine gave notice that unless redemption was made before July 26, 1939, that on said date the county would apply for a tax deed. By affidavit of the County Clerk and Recorder of Blaine County dated July 26, 1939, it appeared: That the described lands then were unoccupied; that it appears from the records of the county clerk and recorder the present owners of the described real estate are George H. Sullivan and Mrs. George H. Sullivan whose postoffice address is 104 N. Maine Street, Stillwater, Minnesota; that other than the owners Sullivan, none others hold mortgages, assignments of mortgages, or other liens against said property; that true and correct copies of the county's notice of application for tax deed were sent on April 22, 1939 by registered mail to the owners, George H. Sullivan and Mrs. George H. Sullivan at the postoffice address above given; and that said notice was duly and regularly published, as required by law, in The Harlem News, a newspaper of general circulation in Blaine County, Montana.

Attached as an exhibit to the foregoing affidavit is a copy of the notice of application for tax deed which states that there was at that time due as delinquent taxes against said property the following amounts, viz.: For 1931 tax $32.11; for 1932 tax $65.55; for 1933 tax $69.54; for 1934 tax $59.22;

for 1935 tax $44; for 1936 tax $43.54; for 1937 tax $46.20, and for first half 1938 tax $22.89, and that the total amount due as of July 26, 1939, was the sum of Three Hundred Eighty-three and 11/100 Dollars ($383.11).

The county treasurer of Blaine County by tax deed dated July 26, 1939, and recorded July 31, 1939, granted to Blaine County, Montana, the described 320 acres of land, reciting a consideration of $406.41 paid therefor. Thereafter, on March 1, 1943, the County of Blaine entered into a written contract with M. H. Skones to sell the land to the latter on installment payments.

On June 11, 1943, the plaintiff Jess E. Van Voast commenced this action against Blaine County, H. D. Hiebert as treasurer of said county, and M. H. Skones and his wife, seeking to have declared void the tax deed to the county and the contract of sale entered into with the defendant M. H. Skones. Plaintiff also seeks an order of court directing the county treasurer of Blaine County "to advise plaintiff the correct and lawful amount to be paid plaintiff to redeem said land from the tax sale" and "upon the payment thereof to the proper fiscal officer of Blaine County" that the "Court by decree order that said land has been lawfully redeemed by the plaintiff herein from said tax sale and that plaintiff's title to said land, upon the payment thereof, be quieted."

Section 2209, Revised Codes, provides that the purchaser of property sold for delinquent taxes must at least sixty (60) days before he applies for a deed, "serve upon *the owner* of the property purchased. if known, *and upon the person occupying the property, if the said property is occupied* * * * a written notice, stating that said property * * * has been sold for delinquent taxes, giving the date of the sale, the amount of property sold, the amount for which it was sold, the amount due, and the time when the right of redemption will expire, or when the purchaser will apply for a tax deed, and *the owner* of the property, or *the mortgagee,* or *the assignee* of said mortgagee has the right of redemption indefi-

nitely until such notice has been given and the deed applied for, upon the payment of fees, percentages, penalties and costs required by law." (Emphasis ours).

The plaintiff disputed the fact statement contained in the county clerk's affidavit to the effect, "That the above described property is unoccupied." Plaintiff contends that he was the person then occupying the property and that as such occupant he was entitled, under section 2209, Revised Codes, supra, to receive at least sixty days notice before the county applied for a tax deed.

The county denied that the plaintiff was the occupant of the property at the time mentioned or that the lands were then occupied.

Thus the question presented is: Was the plaintiff Jess E. Van Voast occupying the Sullivan property on April 22, 1939 at which time the county gave notice of its intention to make application for a tax deed?

It is conceded that no notice was served on plaintiff and it is quite clear that plaintiff was not entitled to notice unless he could establish by a preponderance of the evidence that at the time stated he was "the person occupying the property," the burden of proof being on him. Witherhead v. Ort, 223 App. Div. 626, 229 N.Y.S. 315, 317.

After hearing and considering the evidence introduced by the respective parties, the trial court made written findings of fact and rendered its decree for defendants and against plaintiff.

The trial court found:

"VI. That the said lands were not occupied and the plaintiff was not occupying said lands on April 22, 1939, and thereafter during the time when Blaine County was giving notice of application for Tax Deed thereto, and that Blaine County did not know and in the exercise of reasonable diligence could not have known that the plaintiff had any interest therein and did not serve Notice of Application for Tax Deed on the plaintiff.

"VII. That the defendant, Blaine County, did on the 22nd day of April, 1939, give legal and sufficient Notice of Application for Tax Deed to said land to the persons entitled thereto and Blaine County did thereafter take and receive said Tax Deed to said real property, which said Tax Deed was legally issued and delivered to it."

In Bickford v. Bickford, 158 Pac. (2d) 796, 797, we ▇ said:

"On appeal to this court the presumption is that the decree and findings of the trial court are correct. In re Bragg's Estate, 106 Mont. 132, 76 Pac. (2d) 57; Missoula Light & Water Co. v. Hughes, 106 Mont. 355, 77 Pac. (2d) 1041; Cedar Creek Oil & Gas Co. v. Archer, 112 Mont. 477, 117 Pac. (2d) 265; Wieri v. Anaconda Copper Min. Co., Mont., 156 Pac. (2d) 838; Whitcomb v. Koechel, Mont., 158 Pac. (2d) 496.

"The findings of the trial court must be sustained if they are supported by substantial evidence. Kommers v. Palagi, 111 Mont., 293, 108 Pac. (2d) 208. All legitimate and reasonable inferences must be indulged toward upholding the findings. Welch v. Thomas, 102 Mont. 591, 61 Pac. (2d) 404."

There is evidence that in 1939 the Sullivan half section was unenclosed, unimproved and uncultivated grazing land located in what is called "open country" where everyone ran their livestock and that the cattle and horses of various persons, including those of plaintiff as well as those of his neighbors, roamed and grazed thereon. To the north of the Sullivan tract were lands owned by Mrs. Skones the mother of the defendant M. H. Skones; to the west was a half section owned by plaintiff; to the south was section 36 being a school section owned by the state, and to the east was "just open range."

Plaintiff introduced in evidence an unfiled and unrecorded written lease dated April 1, 1926, whereby for an agreed consideration of $30 per year the owner George H. Sullivan of Stillwater, Minnesota, leased his half section of land to the plaintiff for "the term of three (3) years * * * ending

April 1, 1929.'' The instrument recites that the ''land has no fencing on same'' and that in order for plaintiff ''to use said land for grazing he will have to build one and one-half miles of fence at his own expense and after the expiration of this lease'' he ''has the right to remove his property, from said land.''

There is no evidence that the west or south boundaries of the Sullivan lands were ever fenced but plaintiff testified that on receipt of the lease in 1926 he built a three-wire fence extending from the southeast corner of the Sullivan tract ''north a mile thence west a mile'' and that he used such lands ''for summer pasture those days quite a lot before I got other pasture in the hills for the summer.'' On cross-examination plaintiff admitted that in the year 1939 the fence along the east side of the Sullivan tract ''needed rebuilding''; that the wires were down in places and ''needed repairing'' and that ''the posts weren't any too good'' as the fence ''had been there quite a while.''

The plaintiff testified that he had paid the stipulated annual rental during the three years covered by the lease, i. e. from April 1, 1926, to April 1, 1929, but admitted that thereafter and for the ten years which elapsed from the time of the expiration of the lease to the time the county applied for a tax deed that plaintiff had paid no rental whatever. During all this time the plaintiff occupied as his home buildings located in the west half of section 34, township 36 north, range 26 east, M. M., owned by plaintiff, which buildings are situate approximately two and one-half miles distance from the nearest point on the Sullivan lands.

There is no evidence that plaintiff or any other person ever resided on any part of the Sullivan lands during any of the time involved herein.

The defendant M. H. Skones resides about five miles from the Sullivan half section. He testified that in February 1937 he drove through the center of the Sullivan tract while hunting horses; that there were then indications that there had

been fences on the property "but they were not up"; that where he crossed the property line the wires were down and a lot of the posts were down; that the fence would not hold livestock; that when he arrived there was a bunch of horses on the land but that upon his approach the horses moved off the land and eastward into Phillips County; that thereafter the witness drove back through the Sullivan tract saying, "and I didn't have to bother with any fences, they were down, and I went through"; that the witness knew the plaintiff owned the west half of the section but that he did not know that plaintiff was using the east half of the section; that there was then nothing about the land to indicate that the plaintiff had possession of the Sullivan property and that the witness had never seen the plaintiff on such lands.

Peter Skones testified that for 31 years he had resided and still resides just a mile southeast of the Sullivan lands; that almost every week of the year he went through such lands in caring for his cattle; that there were some years when he would go through the property and find nothing thereon so far as fences were concerned; that he was over the land in the summer of 1940 and in June 1941 at which times he found no fences that would hold cattle or horses but only the remains of fences consisting of "some wire scattered here and there and some rotten posts standing here and there"; that occasionally he had seen the plaintiff on the Sullivan land and had seen running back and forth thereon the cattle and horses of plaintiff as well as those of his neighbors; that about November 1941 a fence was built on the county line along the east boundary of the Sullivan tract and that, "Before that there was no fence."

Vernon Heilig testified that in the fall of 1941, while he was in plaintiff's employ, he assisted in building a completely new fence on the east line of the Sullivan lands; that prior to that time there was no fence nor was there any evidence of any fence having been there; that the only fence which he

saw was an old cross fence with the posts and wire down which "fence" would not hold cattle or horses.

Gordon Skones who for 22 years had lived within a mile of the Sullivan land testified that from the year 1935 to the fall of 1941, along the north line of the tract, there was only a small trace of a fence consisting of "an odd post standing and loose wires, and on the east side there wasn't a trace," and that such condition obtained until November 1941 when "Somebody built a fence along the east side of 24 and 25"; that prior to 1941 he saw stock on the Sullivan lands; that everyone ran stock in there and that to the east of the township or county line there was "just open range" with no fences at all.

Frank L. Bagan, an employee of Blaine County, testified that he had been over the Sullivan lands in 1940 at which time the only signs of fences on the property "were a few broken down posts and wire, some of the wire was out in the trail, just rolled up and rolled out." He also testified that there was nothing that he could discover about this land which would indicate that plaintiff occupied it and "there wasn't any sign of anybody having control of it. It was open range' with a few horses running there.

By the law of this state, made so by express statute, all barbed wire and other wire fencing which has sagged or fallen to the ground so as to be ineffectual for the purpose of turning stock, and a menace to any person riding or walking over the same is declared to be a public nuisance, and subject to abatement. Upon ascertaining the existence of any such wire nuisance it becomes the duty of the board of county commissioners to notify the owner to remove the same provided such owner be within the state of Montana and known to the board and if there be no owner within the state or if such owner be unknown to it then the board is empowered to collect and remove such wire at the expense of the county. Sections 3376.1, 3376.2 and 3376.3, Revised Codes of 1935. Thus is it against the declared public policy of this state to allow

or permit sagged or fallen fencing wire to clutter the range and become a menace to persons riding or walking thereover.

The lease of April 1, 1926 which expired in April 1929 contained a provision to the effect "that if the second party remains in possession of said premises after the expiration of the term for which they are hereby leased such possession shall not be construed to be a renewal of this lease, but to be a tenancy at the will of first party which may be terminated upon thirty (30) days' notice given by said first party." The evidence, however, falls far short of establishing that plaintiff remained "in possession of said premises after the expiration of the term" for which they were leased, i. e. after April 1, 1929. As before stated, the plantiff testified that he used the Sullivan lands "for summer pasture those days quite a lot before J got other pasture in the hills for summer" and it is possible that when plaintiff did procure "other pasture in the hills for the summer" that he was no longer interested in renting the Sullivan lands or in maintaining any fence or fences thereon but in any event the evidence is clear that plaintiff paid Sullivan no rent after the expiration date of the lease nor did he thereafter maintain any fence thereon until November 1941 the latter date being over two years subsequent to the time the tax deed issued to the county. The fence which plaintiff delayed building until November 1941 most certainly did not constitute any visible evidence of Plaintiff's claimed occupancy in 1939 when the county applied for a tax deed.

So far as the public records of Blaine County are concerned there was nothing to show that the unfiled and unrecorded lease of April 1, 1926, ever existed and the evidence introduced on behalf of defendants, if believed by the trial court, was ample to sustain the court's findings that "the lands are not occupied and the plaintiff was not occupying said lands on April 22, 1939."

In State (Colwell, Prosecutor) v. Abbott, 42 N.J.L. 111, at pages 113, 114, 13 Vroom 111, at pages 113, 114, it is said:

"The terms 'occupied' and 'unoccupied' are found in the tax laws * * *. The word 'unoccupied,' as used in the act of 1854, is said in State v. Hoffman (30 N.J.L. 346) to designate the same kind of land as was described in a previous tax law * * * as unimproved or untenanted land, and to mean land having no visible occupant or possessor. To the same effect is what is said by the court in State (Cosset, Prosecutor) v. Reinhardt [31 N.J.L. 218], 2 Vroom 218. * * * This tract, being wild and untenanted, without visible occupant or possessor, was, for the purposes of taxation, unoccupied land.''

In Lawrence v. Fulton, 19 Cal. 683, 684, the court held that the term ''occupation'' is ordinarily employed as signifying actual possession.

In People ex rel. Marsh v. Campbell, 143 N.Y. 335, 38 N.E. 300, one Alvah Dunning sought to redeem from tax sale some 5,455 acres sold in 1881 for delinquent taxes on the grounds that he had been the actual occupant of parts of the premises from 1875 to a time subsequent to the delivery of the tax deed and no notice had been served upon him affording him the opportunity to redeem as required by statute. In affirming the decision of the lower court denying Dunning's application to redeem, the appellate court said: ''The decision of the general term that the occupancy by Dunning of a log house located on an island in the Eighth lake of the Fulton chain, as a hunting camp, at irregular intervals, and without any use of the mainland, except to roam over it in pursuit of game, did not constitute actual occupancy, under the statute, meets with our approval; * * *. The relator's right to intervene is rested upon section 70, c. 427, Laws 1855, already referred to. This section reads: 'The occupant or any other person may, at any time within the six months mentioned in such notice, redeem the said land,' etc. It is insisted that the proper construction of this section entitles any person to redeem, although an entire stranger having no interest in the premises. This section admits of no such construction, and its general phraseology was designed to include any other person

than the occupant having, or claiming in good faith to have, such substantial interest in the premises as would entitle him to redeem. The pernicious practice that obtains of permitting a stranger to the title to intervene and set the machinery of the comptroller's office in motion in order that he may redeem lands sold for taxes has no foundation in law. We affirm this order on the grounds that no part of the premises sought to be redeemed had an actual occupant in contemplation of law, and that the relator has no legal standing in this proceeding, and is not entitled to redeem.''

In West End Brewing Co. v. Osborne, 133 Misc. 823, 233 N.Y.S. 223, 226, certain real property consisting of two city lots was sold for delinquent taxes. There were no buildings on the premises nor had there been any cultivation or enclosure thereof. About six years before the tax sale plaintiff had caused to be erected on the property a sign board 10 x 40 feet advertising its products. The name General Outdoors Advertising Company appeared on the sign board but no address was given. Plaintiff attacked the tax deed contending that it actually occupied the lots at the expiration of the equity of redemption and was entitled to notice to redeem, which notice had not been given to nor served upon it. In holding that plaintiff had no standing to maintain its action the appellate court said: ''No possession or occupancy within the meaning of the statute can be predicated on an occasional or temporary use of the premises. It seems to me that at the time defendant obtained the treasurer's deed there was no actual occupancy of these premises in contemplation of law. Certainly the proof fails to establish any such occupancy as called for a compliance with the provisions of law that a written notice to redeem must be served upon the occupant. The mere erection of a signboard upon the premises by plaintiff, advertising its products, is wholly insufficient to establish occupancy by plaintiff within the meaning of section 134 of the Tax Law.'' (Citing cases.)

In People v. Turner, 145 N. Y. 451, 40 N. E. 400, 403, the

contention was made that a tax title was defective because no notice was served upon a person alleged to be in actual occupancy of part of the lands sold. In holding the contention untenable the court said: "The finding of the referee was that the land was wild, uncultivated, and unimproved forest land, with a small natural meadow of about 10 acres, upon which, some time after the year 1870, by the leave of Norton, the then owner, one Moody entered and cut and hauled away grass. Upon two occasions he had scattered a little grass seed, and at times he had dammed up the brook, so as to overflow about half an acre. There was no residence or building upon the land, nor any cultivation or inclosure thereof, as was the case in People v. Wemple, 144 N. Y. 478, 38 N. E. 397. We think the proof fell far short of establishing any such actual occupancy of the lands by any person as called for a compliance with the provision of the law that a written notice to redeem must be served on the occupant." See also Ashworth v. Biulders' Mutual Fire Insurance Company, 112 Mass. 322, 17 Am. Rep. 117, and Witherhead v. Ort, supra.

It is quite clear from the evidence that there was nothing on the public records of Blaine County to indicate that plaintiff had any right or interest in the Sullivan lands and in the year 1939 there likewise was nothing on or about these unimproved, uncultivated, unfeneced grazing lands admittedly adjacent to, if not actually a part of, the "open range" to indicate any visible occupant or possessor thereof. State (Colwell, Prosecutor) v. Abbott, supra.

Since the trial court's findings of fact and conclusions of law are sustained by the evidence they may not be disturbed and the judgment based thereon is affirmed.

Mr. Chief Justice Johnson, concurs.

Mr. Justice Cheadle, (concurring).

I concur in the majority opinion, which is based upon the proposition that the trial courts' finding that "the said lands were not occupied and the plaintiff was not occupying said lands on April 22, 1939, and thereafter during the time when

Blaine County was giving notice of application for Tax Deed thereto * * *.''

In my opinion the action should be dismissed on an additional ground. The cause of action attempted to be stated in the complaint is based upon the supposed right of the plaintiff, as the alleged occupant of the land, to sixty days' notice of application for tax deed, ''and a sixty-day period of redemption, as provdied by section 2209, R. C. M., 1935.'' The prayer of the complaint asks judgment, inter alia, that the county treasurer be directed to advise plaintiff of the correct amount ''to be paid by plaintiff to redeem said land from the tax sale thereof made on July 26, 1939, and that upon the payment thereof to the proper fiscal officer of Blaine County, this court by decree order that said land has been lawfully redeemed by the plaintiff herein from said tax sale, and that plaintiff's title to said land, upon the payment thereof, be quieted.''

It is clear that the plaintiff had no title to be quieted. It is equally clear, I think that plaintiff was never entitled to redeem from the tax sale. He is not embraced within the classification of perons entitled to redeem under the provisions of sections 2201 and 2209, Revised Codes. The person seeking to redeem must bring himself within the provisions of the redemption statutes. State ex rel. Federal Land Bank v. Hays, 86 Mont. 58, 282 Pac. 32. The manifest purpose of the legislature in requiring such service upon the ''occupant,'' was to further insure that such notice reach the persons entitled to redeem from the tax sale. It follows, I think, that the requirement of service upon the occupant is for the benefit of the persons entitled to redeem, and not of the occupant, unless he be included within that classification. It is my view, that since the plaintiff is neither the owner of any title to the land, or of any such interest therein as would entitle him to redeem, he has no such direct interest therein as would permit him to attack the tax deed proceedings or to question the validity of the deed. See Despard v. Pearcy, 65 W. Va. 140, 63 S. E. 871, 872 wherein it is said: ''To set aside a tax

deed the complainant must show in himself title to the land or right to redeem. If he has no title to the land, or right to redeem it he has no equity enabling him to disturb a tax deed in relation to it.'' See also Cline v. Bailey, 85 W. Va. 139, 101 S. E. 171 Black on Tax Titles, 2d Ed., sec. 430, 542; McCarthy v. Union Pac. R. Co., 58 Wyo. 308, 131 Pac. (2d) 326.

Mr. Justice Morris (dissenting).

I dissent. This court held in the recent case of Jensen Livestock Co. v. Custer County, 113 Mont. 285, 124 Pac. (2d) 1013, 140 A. L. R. 658, that an occupant of land as well as the owner must be notified by the county pursuant to section 2209, Revised Codes of the county's intention to apply for a tax deed; that knowledge of the occupant of the county's intention derived from any other source than that required to be given by the county by the above section was ineffective. No notice was given the plaintiff in the instant case of the intention of the county to apply for the tax deed and the trial court held that no notice to the plaintiff was necessary for the reason that he did not occupy the land. The facts as to plaintiff's occupancy are these: April 1, 1926, George H. Sullivan, the homestead owner of the land, gave the plaintiff a three-year lease which was admitted in evidence as plaintiff's Exhibit ''D.'' The lease contained these paragraphs:

''It is understood that the above described land has no fencing on same. In order for second party to use said land for grazing he will have to build one and one-half miles of fence at his own expense and after the expiration of this lease the party of the second part has the right to remove his property from said land.

''It is also agreed and understood, that if the second party remains in possession of said premises after the expiration of the term for which they are hereby leased such possession shall not be construed to be a renewal of this lease, but to be a tenancy at the will of first party which may be terminated upon thirty (30) days' notice given by said first party in the manner hereinbefore provided.''

The functions of the notice as required by section 2209 and process in a civil action are substantially the same. Relative to that question this court said in Small v. Hull et al., 96 Mont. 525, 535, 32 Pac. (2d) 4, 7:

" 'The law does not merely require the giving of notice before the tax deed can issue. It expressly extends to the property owner the right of redemption until such time as the notice is given. The right of redemption then becomes a vested property right, and one of which he can be legally deprived only in the manner provided by law, to-wit, the giving of the notice. The law, by its terms, gives to the notice the diginity of process of law, and to deprive him of his property, without giving him this notice, is to deprive him of his property without due process of law. The giving of this notice is just as much a prerequisite to the issuance of a tax deed that will bar the right of redemption as the service of a summons is a prerequisite to the entry of a valid judgment.'

"In the case of Lind v. Stubblefield, 138 Okl. 280, 282 Pac. 365, 366, in speaking of this precise question, the court said: 'In the present case the plaintiff alleged a failure of notice; that is, a failure to give the owner the written notice provided by section 9749, Comp. Okl. Stat. 1921 [68 O. S. 1941 sec. 451]. Notice in this connection is analogous to process in the courts; and it is well known that a judgment, even so solemn a document as it is, is absolutely void unless the defendant has been served with process, with personal service, or some substituted service, provided by law. Otherwise he is deprived of his property without due process of law. And a judgment is equally as void, where it recites on its face that the defendant has been served with regular process, as any other void judgment, *when the judgment roll or the proceedings disclose that the defendant has not been served with process.* A judgment of this character is void, absolutely void, and can be stricken down at any time. Pettis v. Johnson, 78 Okl. 277, 190 Pac. 681. The fact that the deed in the present case recited that proper notice was given did not bolster the title. The inval-

idity of a tax title or the rights of the owner of land must depend upon a more substantial basis than a mere recital in a deed. If certain vital requirements are lacking in a proceeding, their necessity cannot be removed, and a fundamentally defective title cannot be made a good title by simply drafting a good and proper tax deed.'

"Cases reaching the same result, where there were jurisdictional defects rendering the deed void, are: Baker v. Rogers, 148 Okl. 279, 1 Pac. (2d) 366; Ashur v. McCreery, 150 Okl. 111, 300 Pac. 767; Jones v. McGrath, 160 Okl. 211, 16 Pac. (2d) 853; Urquhart v. Wescott, 65 Wis. 135, 26 N. W. 552; Neilan v. Unity Inv. Co., supra [147 Iowa 677, 126 N. W. 947]; Shelley v. Smith, 97 Iowa 259, 66 N. W. 172; Mote v. Thompson, Tex. Civ. App., 156 S. W. 1105; Harris v. Mason, 120 Tenn. [666], 668, 115 S. W. 1146, 25 L. R. A., N. S., 1011; Wildman v. Enfield, 174 Ark. 1005, 298 S. W. 196; Clifford v. Hyde County, 24 S. D. 237, 123 N. W. 872; see, also, 61 C. J. 1430, note 62; 26 R. C. L. 443." See also 42 Am. Jur. 7.

The clause in the Sullivan lease giving the plaintiff the right to remain in possession as a tenant at will, after his lease expired, and until he should be given thirty days' written notice to vacate, gave the plaintiff such right of possession that he could not be ousted until he received the kind of notice his lease contract called for. The provisions of the lease control.

In 32 Am. Jur. 790, section 936, it is said: "Necessarily, rules as to holdover tenancies have no application where there is a contrary mutual understanding as to the tenant's continued occupancy of the premises, * * *. The parties to a lease may therein expressly provide for a holding over, and what the nature of the tenancy shall be after the expiration of the term, and such an agreement will govern."

Certainly no one succeeding to the rights of the lessor, Sullivan, could oust the plaintiff until such successor in interest gave the notice to vacate as provided by the lease, and the lease in the hands of the plaintiff was a complete defense against any other who attempted to oust him.

It must be remembered that when a county undertakes to acquire title to property for delinquent taxes its acts are in the nature of an ex parte proceeding by which property is confiscated, and that the statutes must be strictly complied with and a high degree of diligence exercised in locating and serving with notice all persons beneficially interested in the property in order to bring the property within the jurisdiction of the county officials whose duty it is to act in the premises. Jensen Livestock Co. v. Custer County, supra.

Section 2209 requires written notice to the occupant of the land as well as the owner before a valid tax deed can be issued.

As to quieting plaintiff's right of possession, as Sullivan's tenant, he cannot be ousted until Sullivan or some one authorized to act for Sullivan or his estate, gives the plaintiff the thirty days' written notice to vacate. On the expiration of the thirty days following such notice the plaintiff could be proceeded against as a trespasser.

As to plaintiff's right to maintain the action to set aside the tax deed, it is sufficient to say that if plaintiff's right of possession be treated as personal property, as some courts hold (Jeffers v. Easton, E. & Co., 113 Cal. 345, 45 Pac. 680), the right exists by virtue of section 9478.1, Revised Codes.

Plaintiff has shown no title to the land by adverse possession. His possession of the land was never openly adverse. Sec. 9023, Rev. Codes; Price v. Western Life Ins. Co., 115 Mont. 509, 146 Pac. (2d) 165; La Vasseur v. Roullman, 93 Mont. 552, 20 Pac. (2d) 250.

The contention that one cannot possess or legally occupy unfenced land in Montana where range law is recognized is absurd. Only range stock is exempt from trespassing on unfenced lands in this state. The rule is firmly established in Montana that the owner of livestock who willfully drives or permits his stock to trespass upon unfenced lands may be held liable in an action for trespass. It was said in Schreiner v. Deep Creek Stock Association, 68 Mont. 104, 111, 217 Pac.

663, 666, that: "Privately owned premises must be fenced as required by statute in order to enable the owner to maintain an action for trespass by the livestock of another unless * * * the trespassing animal has been placed or caused to be placed thereon by the owner of the animal with knowledge that the land is not open public domain." There are many cases in the books wherein it has been held that whether land is fenced or not is immaterial in an action for trespass. See Chilcott v. Rea, 52 Mont. 134, 155 Pac. 1114, and cases cited.

The plaintiff continued in possession of the land involved as a tenant at will by virtue of his three-year lease dated April 1, 1926. The fact that he paid no rent was immaterial. Section 6744, Revised Codes, provides: "A tenancy or other estate at will, however created, may be terminated by the landlord's giving notice in writing to the tenant, in the manner prescribed by the Code of Civil Procedure, to remove from the premises within a period of not less than one (1) month, to be specified in the notice; * * *."

There is no other way to terminate a tenancy at will in this state than the mode provided by this section of our statutes. The notice provided by the lease was not given and plaintiff's tenancy. was never terminated as provided by the above provisions of the statutes.

The negligence of the county land man who investigated the land and who made the affidavit that the land was unoccupied was palpable and inexcusable. It was upon his affidavit that the notice of intention to apply for a tax deed was based. He admitted he made no inquiries in the neighborhood of the land as to occupancy; the county records revealed the fact that the other half of the section was owned by the plaintiff yet no inquiry was made of the plaintiff as to the occupancy of the land; the three Skones, all of the same family, who testified and who were interested parties had lived in the neighborhood since 1912 but it does not appear that the county land man inquired of any of them as to whether the land was occupied or not; the plaintiff obviously fenced the

land as provided by his lease as the lease stated there was no fence around the land and that he would be required to fence it if he desired to use it for grazing purposes, and the Skones had been neighbors of the plaintiff for more than fifteen years before the lease was made and were his neighbors when the land was fenced. Being interested parties, the county should not have relied alone upon any information obtained from that source but the address of Sullivan, the record owner of the land, was known and he was given notice by registered mail and later by publication but it does not appear that any effort was made to contact Sullivan or anyone who knew him to make inquiries about the land or whether it was occupied or not. Any attempt by the county to discover whether or not anyone claimed possession of the land or occupied it was far short of the essentials of service as heretofore set out. For a lack of proper inquiry as to the occupancy and failure to serve the plaintiff with notice as required by section 2209, the land was never brought within the jurisdiction of the county officials and the tax deed is void.

Mr. Justice Angstman (dissenting).

In my opinion the majority opinion construes section 2209, Revised Codes 1935, too strictly and not with the liberality commanded by section 4, Revised Codes 1935.

I believe, since plaintiff was a tenant at will of the property and since he was using it for grazing purposes, he must be held to be an occupant within the meaning of that term as used in section 2209. "To constitute occupancy it is not necessary that a person build a house upon land, or that he live there," (Little v. Riley, 120 Misc. 707, 199 N. Y. S. 422, 424) or that the land be occupied or possessed in such a way as might ripen into title by adverse possession. West End Brewing Co. v. Osborne, 227 App. Div. 340, 238 N. Y. S. 345. Courts should construe statutes such as section 2209 liberally in favor of the occupants or owners, because "the purpose of the Tax Law is to provide for the collection of taxes—not to make easy the forfeiture of one's property to another." Little v. Riley,

supra. The word "occupy" may have a variety of meanings depending upon the class of property involved and the purpose of the statute relating to occupancy. Where farm land is used and cultivated by the owner, it is occupied by him though he does not reside on it. Lyons v. Andry, 106 La. 356, 31 So. 38, 55 L. R. A. 724, 87 Am. St. Rep. 299.

I think, when dealing with grazing land, it is occupied by a person within the meaning of section 2209 when he holds it under lease and when his livestock graze on it, as here, and that this conclusion is not affected by the fact that livestock belonging to others also are permitted access to the land, or that the fences are dilapidated or that there are no fences at all on the property. Absence of a legal fence or presence of one which the county commissioners might remove as a nuisance has nothing to do with the question of whether grazing land is occupied. I think all the evidence shows the land was occupied by plaintiff when we give the word "occupancy" the proper meaning and that the case is not one where we should sustain the trial court because of conflicting evidence.

As to the point raised in the special opinion of Mr. Justice Cheadle, it should be remembered that the rule is that plaintiff has a sufficient interest to maintain the action if the person under whom plaintiff claims had title at the time of the sale. Smith v. Whitney, 105 Mont. 523, 74 Pac. (2d) 450.

Here plaintiff claims under the original owner, Sullivan. The relationship of landlord and tenant exists between Sullivan and this plaintiff.

In jurisdictions where the tax title is not derivative, but where a new title is created by the tax deed, as in this state (Jenson Livestock Co. v. Custer County, 113 Mont. 285, 124 Pac. (2d) 1013, 140 A. L. R. 658), its effect is to extinguish existing tenancies. 51 Am. Jur., Taxation, sec. 1071.

Hence it follows that if the tax deed here involved is valid plaintiff's rights as a tenant are extinguished by it. If the tax deed is invalid his rights are not affected. I think he has the right to question the validity of the tax deed by this pro-

ceeding in order to have it judicially determined whether his lease has been extinguished legally. The effect of the action is simply to have it adjudicated that Sullivan, under whom plaintiff claims, is still the legal owner of the property. I agree that plaintiff may not have all the relief which he has asked. He has no right on his own account to redeem the property. I think though that he is entitled to have the tax deed set aside.

In this state an action to quiet title to personal property lies. Section 9478.1, Revised Codes. A lease of real property is generally treated as personal property (Jeffers v. Easton, Eldridge & Co., 113 Cal. 345, 45 Pac. 680; German-American Savings Bank v. Gollmer, 155 Cal. 683, 102 Pac. 932, 24 L. R. A., N. S., 1066), but if it be treated as an interest in real property as was done in the last cited case, the action still lies because of section 9479, Revised Codes.

I think the judgment should be reversed and judgment entered to the effect that the tax deed is invalid.

Rehearing denied April 16, 1946.