VAN VOAST, Appellant, v. BLAINE COUNTY et al., Respondents.

No. 8589

Submitted December 10, 1945. Decided March 19, 1946.

167 Pac. (2d) 572

Mr. Harry L. Burns, of Chinook, and Mr. Jess L. Angstman, of Havre, for appellant.

Mr. Oscar C. Hauge, of Havre, and Mr. D. J. Sias, of Chinook, for respondents.

MR. JUSTICE ADAIR delivered the opinion of the Court.

Boyd Murphy homesteaded and was issued a fee patent for the East Half (E½) of Section Twenty-four (24), Township Thirty-six (36) North, Range Twenty-six (26) East, M. M., less 15.7 acres deeded to Great Northern Railway Company and situate in Blaine County, Montana. Thereafter the First National Bank of Harlem, Montana, came into possession of the land. The bank became insolvent and was liquidated, at which time one Ira S. Harbolt purchased its remaining assets in which transaction title to the Murphy land passed to Harbolt. Taxes on the land were allowed to become delinquent and on July 2, 1936, the described land was sold to the county of Blaine for delinquent taxes for the year 1935. No taxes were paid on the land for the years 1935 to 1941, both inclusive, and on September 27, 1941, the county of Blaine gave written notice by registered mail to Ira S. Harbolt and wife that unless redemption was made before December 12, 1941, that on such date the county would apply for a tax deed, the said Ira S. Harbolt then being the record owner of the Murphy

land. The notice stated the amount of taxes dues as of December 12, 1941, to be $181.95.

No redemption was made from said tax sale and on December 12, 1941, the county treasurer of Blaine County by tax deed granted to Blaine County the above described Boyd Murphy land containing 304.3 acres, such tax deed being placed of record on December 17, 1941. Thereafter on January 19, 1945, the county of Blaine entered into a written contract with the defendant Gordon Skones, to sell the Boyd Murphy land to the latter on installment payments.

On June 3, 1943, Ira S. Harbolt and wife, for a consideration of $25, made, executed and delivered to the plaintiff J. E. Van Voast a quitclaim deed of all their right, title and interest in and to the Murphy land and eight days later, to-wit on June 11, 1943, the plaintiff J. E. Van Voast commenced this action against Blaine County and Gordon Skones seeking to have declared void the tax deed to the county and the contract of sale entered into with the defendant Gordon Skones and to have his alleged title to the lands quieted.

The plaintiff contends that at the time the county gave notice of its intention to apply for a tax deed to the Boyd Murphy land that plaintiff was then "the person occupying the property" and as such alleged occupant he was entitled under section 2209, Revised Codes of Montana 1935, to receive at least sixty days' written notice of the county's application for a tax deed and that, since admittedly no such notice was served upon the plaintiff, the tax deed issued to the county is void. In the affidavit of the county clerk and recorder of Blaine County, submitted to the county treasurer of said county before the issuance of said tax deed to the Murphy land, appears the statement, "That the above described property is unoccupied."

The question presented here, as in Van Voast v. Blaine County et al., Cause No. 8588, 167 Pac. (2d) 563, is: Was the plaintiff Van Voast occupying the property within the meaning of section 2209, Revised Codes, at the time the county gave

notice of its intention to make application for a tax deed?

The trial court, after hearing the evidence, made written findings of fact and conclusions of law and rendered its decree for defendant and against the plaintiff. Among the findings of fact so made were the following:

"III. That the defendant Blaine County, Montana, is the owner of said described real property situated in Blaine County, Montana, * * * under and by virtue of a Tax Deed which· bears the date December 12, 1941, and which was issued, delivered and filed for record in the office of the Clerk and Recorder of Blaine County, Montana, on Deecmber 17, 1941.

"IV. That the defendant Gordon Skones has an interest in, has purchased and is entitled to the possession of said real estate under and by virtue of a contract of sale from Blaine County, Montana, made and entered into between said Blaine County, Montana, and said Gordon Skones on or about January 19, 1943, and by the terms of which said Blaine County contracted to sell and Gordon Skones contracted to purchase said land.

"V. That the said lands were not occupied and the plaintiff was not occupying said lands from September 27, 1941, to November 1, 1941, inclusive, and when Blaine County, Montana, was giving notice of application for Tax Deed thereto, and that Blaine County, Montana, did not know and in the exercise of reasonable diligence could not have known that · the plaintiff had any interest therein and did not serve said Notice of Application for Tax Deed on the plaintiff.

"VI. That said Tax Deed was made, executed and delivered by the County Treasurer of Blaine County, Montana, and filed for record in the office of the Clerk and Recorder of Blaine County, Montana, on December 17, 1941, and the proofs of service of said Notice of Application for Tax Deed and the Affidavits required by law supporting the same were actually made, executed and filed as required by law before said Tax Deed was issued and delivered to Blaine County, Montana."

Plaintiff's evidence was to the effect that on March 22, 1938, being almost two years subsequent to the sale of the Murphy land to the county of Blaine for delinquent taxes, Harbolt leased the land to the plaintiff ''for the season of 1938'' for grazing that plaintiff agreed to pay Harbolt $15 for the season that $7.50 was paid by check at the time and the remaining $7.50 the following October. The lease was neither filed for record nor recorded. The plaintiff testified that he continued to use the land after 1938 and two checks payable to Harbolt and endorsed by him were introduced in evidence, one being for $36 drawn on the Security State Bank of Harlem, Montana, paid on April 24, 1941, and bearing the notation ''grazing lease and note.'' The other check was for $15, paid May 15, 1942, and bearing the notation ''lease on Murphy Land.'' Thus there is some evidence that plaintiff may have had the right of occupancy when the notice of application for tax deed was given in September 1941; however, the question is whether the use he made of the land constituted actual occupancy. He testified that he used it mostly ''for winter pasture'' for horses and cattle, that the fences were down, that ''there is usually other stock in there sometimes'' but that he paid no attention to them; that ''we keep a saddle horse all the time to look after the stock'' and that somebody was sent to this land ''probably once a week or two weeks''; that ''we tried to keep them * * * on our own ground as much as possible.'' About a month after the notice of application for tax deed was given plaintiff built a fence on the east line of the land.

Various witnesses testified on behalf of the defendant. Vernon Hoilig testified that he was employed by plaintiff; that commencing about November 1, 1941, he assisted in building for plaintiff a new wire fence along the east boundary line of the Boyd Murphy land; that at that time he observed traces of an old fence but that most of the posts had been taken out and that, ''the wire was scattered there, laying here and there.''

Frank L. Bagan, an employee of Blaine County, testified that he observed the Boyd Murphy land in the spring of 1940 and that at that time there was nothing about the land to evidence that same was being used or from which he could determine whether or not plaintiff was occupying the premises; that at that time he observed no fences on the north side of the land or on that portion of the land where he then was; that in the spring of 1942 he inspected the property, at which time he observed a fence along the east boundary line of the property but no other evidence of occupancy.

The witness M. H. Skones, who had known the plaintiff for a quarter of a century and was well acquainted with the real property in controversy, testified that in February 1937 he was over the land at which time he saw only a semblance of a fence which ran in an easterly and westerly direction between sections 24 and 25 and that in June 1943 he was again over the premises at which time he observed a new fence on the east line of the property.

For twenty-five years the defendant, Gordon Skones, and his father, Peter Skones, had made their home in buildings located one mile west of the Boyd Murphy land from which point of vantage they had a clear view of the property involved in this action. Peter Skones testified that he drove across the Murphy land in the summer of 1941 at which time there was no fence but only old broken posts with old wire scattered here and there; that prior to the building of the new fence by the plaintiff in November 1941 the Murphy tract was open range to cattle and horses; that everybody's cattle and horses ranged thereon and that at lambing time in May 1941 he observed Harold Collins' band of sheep on the premises.

The defendant Gordon Skones testified that he frequently rode over the Boyd Murphy land and that prior to the building of the fence in November 1941 along the east boundary he saw no livestock there except for an occasional horse or a few sheep which ranged on and off the property and that

"there was no fences there except on the south side, where there was a post here and there and a little wire dangling" but outside of that there was nothing. The defendant Gordon Skones also testified that prior to the year 1941 he had never seen the plaintiff J. E. Van Voast on the land. There was nothing on the public records of Blaine County prior to the time the county gave notice of its intention to apply for a tax deed to indicate that plaintiff had or claimed any right, title or interest in or to the Boyd Murphy land nor, according to plaintiff's evidence, was there anything about these unimproved, uncultivated, uninclosed grazing lands over which everybody's livestock apparently ranged at will to indicate any visible occupant or possessor thereof. Plaintiff's evidence amply supports the trial court's finding that at the time of application for tax deed the land was unoccupied. See Van Voast v. Blaine County et al., Mont. No. 8588, 167 Pac. (2d) 563; State (Colwell, Prosecutor) v. Abbott, 42 N. J. L. 111, 13 Vroom 111; Lawrence v. Fulton, 19 Cal. 683, 684; People v. Ladew, 102 Misc. 595, 170, N. Y. S. 196, 205; People ex rel. Marsh v. Campbell, 143 N. Y. 335, 38 N. E. 300; People v. Turner, 145 N. Y. 451, 40 N. E. 400; West End Brewing Co. v. Osborne, 133 Misc. 823, 233 N. Y. S. 223; Witherhead v. Ort, 223 App. Div. 626, 229 N. Y. S. 315, 317; Ashworth v. Builders' Mut. Fire Ins. Co., 112 Mass. 422, 17 Am. Rep. 117.

The evidence chronologically summarized shows: that on July 2, 1936, the Boyd Murphy land was sold to the county of Blaine for delinquent taxes; that on September 27, 1941, the county gave notice of its intention to apply for a tax deed; that about November 1, 1941, the plaintiff built a new fence along the east line of the property; that on December 12, 1941, a tax deed covering the land was issued to the county; that on June 3, 1943, but eight days before commencing this action, plaintiff obtained a quitclaim deed to the property from Ira S. Harbolt and wife; that on June 11, 1943, the plaintiff commenced this action to set aside and annul the tax deed and to assert a title hostile thereto.

The fence was too late to constitute any evidence of plaintiff's occupancy since it was not built until some weeks after the county had given notice of its intention to apply for tax deed.

The findings of the trial court and the decree rendered in accordance therewith, being supported by substantial evidence, must be upheld. Van Voast v. Blaine County et al. No. 8588, supra; Bickford v. Bickford, Mont., 158 Pac. (2d) 796.

The judgment and decree of the District Court is affirmed.

Mr. Chief Justice Johnson and Associate Justice Cheadle, concur.

Mr. Justice Morris (dissenting).

I dissent.

The facts in this case and in Case No. 8588, 167 Pac. (2d) 563, and in which the plaintiff in both is the same, are substantially the same, except that in this case the investigation by the county land man as to occupancy was even less vigilant than in the companion case. The record owner of the land involved here, Ira Harbolt, is a resident of Chinook, the county seat of Blaine county, where all the proceedings were had leading up to the issuance of the tax deed; it would have been a very easy matter to have contacted Mr. Harbolt, and had that been done no doubt it would have been revealed that Harbolt had given the plaintiff a deed to the land, and that prior to the transfer of Harbolt's title to the plaintiff, the plaintiff had had the land under lease. No tax deed should issue where no more diligence was shown to discover an occupant of the land to be sold for taxes than was shown in this case.

Mr. Justice Angstman (dissenting).

For the reasons set forth in my dissenting opinion in companion case No. 8588, I think plaintiff was an occupant of the lands involved within the meaning of Section 2209, Revised Codes, and that the judgment should be reversed.