MORRIS ET AL., APPELLANTS, *v.* HALL, RESPONDENT.

No. 8881

Submitted March 29, 1949.   Decided April 25, 1949.

205 Pac. (2d) 800

Mr. Albert C. Angstman and Mr. Ralph J. Anderson, both of Helena, for appellants.   Mr. Anderson argued orally.

Messrs. Loble and Loble of Helena, and Mr. Don Sullivan, of Helena, for respondent.   Mr. Henry Loble argued orally.

MR. JUSTICE METCALF:

This is an action in equity to cancel a lease because of alleged breach of its terms by the defendant.

The complaint alleges that in February 1945, the plaintiffs leased to the defendant certain lands in Lewis and Clark county. The lease was to run for a period of five years.   The plaintiffs

left about 60 head of cattle on the premises to be cared for by the defendant. The defendant was to receive each year one-half the increase of the original herd and at the termination of the lease the defendant was to be entitled to one-half the entire herd.

The defendant was to care for the cattle and farm and improve and develop the lands leased. The specific agreements made by the defendant and allegedly breached are:

(1) "Party of the second part [defendant] agrees to rebuild all fences which are in need of rebuilding and repair, using such materials therefor as are available on the premises or nearby, and that any other materials which are necessary to complete the rebuilding of the fences are to be furnished by the parties of the first part [plaintiffs]."

(2) "The [defendant] agrees to till and cultivate the lands that have heretofore been tilled and cultivated and produce thereon such grain crops as he deems to be for the best interests of the parties hereto, and to plow up, till and cultivate any stands of alfalfa that have deteriorated to the point where they no longer produce a reasonable crop of alfalfa hay and reseed the same to alfalfa to the end that the ranch may produce sufficient hay to support the present herd of cattle and their increase."

(3) " [Defendant] further agrees to during the term of this lease clear and put into cultivation as many acres of brush lands as he is able to and can afford to clear and cultivate, and if heavy machinery is necessary for such work and is available to do such clearing the same shall be furnished by the [plaintiffs]."

It is for the alleged breach of these three conditions that the plaintiffs seek cancellation of the lease.

The defendant answered denying the allegations of the complaint and set up certain affirmative defenses and counter-claims.

After hearing the court made findings of fact which include: "VI. That the testimony and evidence adduced and offered does not show or establish any failure of the defendant and cross-

complainant to perform the terms and conditions of the lease agreement, and that the defendant and cross-complainant has fully complied with the terms and conditions of said lease agreement,'' and ''VII. That the testimony and evidence adduced and offered shows and establishes that said lease agreement is in full force and effect, and the defendant and cross-complainant is entitled to proceed and operate under said lease agreement.''

Based upon these findings of fact the court concluded that the plaintiff was not entitled to cancellation and that the lease agreement was still in full force and effect and that the defendant lessee was entitled to proceed thereunder. Judgment was entered accordingly and from the judgment the plaintiffs have appealed.

There are five specifications of error. They are all concerned with the sufficiency of the evidence to sustain the court's findings, conclusions and judgment. They will be discussed under the main headings set forth in the complaint, i. ë., (1) the defendant's alleged failure to rebuild and repair the fences; (2) the alleged failure to plant grain, and (3) the alleged failure to clear and cultivate the brush land.

In analyzing the evidence this court has repeatedly declared: '' 'On appeal to this court the presumption is that the decree and findings of the trial court are correct. (Citing cases.) '' 'The findings of the trial court must be sustained if they are supported by substantial evidence. Kommers v. Palagi, 111 Mont. 293, 108 Pac. (2d) 208. All legitimate and reasonable inferences must be indulged toward upholding the findings. Welch v. Thomas, 102 Mont. 591, 61 Pac. (2d) 404'.'' Van Voast v. Blaine County, 118 Mont. 375, 167 Pac. (2d) 563, 564, quoting from Bickford v. Bickford, 117 Mont. 372, 158 Pac. (2d) 796, 797.

Evidence relating to the agreement to repair and rebuild the fences: The ranch consisted of approximately 560 acres. The controversy about the repair and rebuilding of fences involved the fence around a forty-acre tract of land that was the least valuable cleared land on the ranch. It was undisputed that

the fence was in need of repair, that it had not been in good shape since 1940 and that at the time of the trial it was in such condition that it would not turn livestock. The evidence as to the value of the land was conflicting but it definitely appears that the land had been used for pasture for most of the past 28 years and that it had been cropped only twice in that period. Rye was planted and a marketable crop produced in 1938 and again in another year rye was planted but washed out. This tract of land had been planted in crested wheat grass at the time defendant leased the ranch. The forty acres in question was located about three miles from the home ranch. It was the defendant's contention that at the time he moved on the place all the fences and outbuildings were in a run-down condition and since this tract was the least valuable and the farthest away from the ranch it was the last to be repaired. Dr. Morris, one of the plaintiffs and the rental agent, admitted that the defendant did ''pretty good work'' in 1945 and 1946.

It was the plaintiffs' duty under the terms of the lease to supply such material for the rebuilding of the fences as was not available on the premises. The evidence as to whether sufficient wire was available was in conflict. The plaintiffs contended that although the fences were down there was adequate materials for the rebuilding of the fences. The defendant testified that sections of wire had been removed and that there was available on the place only enough wire and posts to repair and maintain the existing fence. During the time he was a tenant the defendant repaired and rebuilt approximately five miles of fence. Three-quarters of a mile was entirely new fence. In addition he repainted the ranch house, remodelled and laid a new floor in the kitchen and installed hot and cold water. He built a complete set of corrals, repaired the barns, converted an old store building into a garage and work shop, built a branding shed and branding chute.

Evidence relating to the alleged failure to plant grain: The agreement provided that the defendant was to ''till and cultivate such land as has heretofore been tilled and cultivated and pro-

duce thereon such grain crops as he deems to be for the best interests of the parties thereto.'' The defendant testified that seven acres had been planted to grain the year before he took possession; that in 1945 he planted sixteen acres to grain; in 1946 he planted sixteen acres and in 1947, four acres. Defendant asserted that the ranch was a cattle ranch and it was admitted by the plaintiffs that grain was planted for feed for the cattle; that there was never any intention to raise grain as a cash crop and that at all times the defendant raised ample grain to feed the cattle. The defendant discussed the raising of grain for revenue with Dr. Morris in the spring of 1947 and at that time informed him that hay was of more value to them as feed than grain would be. There was no evidence that this was not good practice or that this policy was not in the best interests of the parties.

Evidence relating to the clearing of brush land: Dr. Morris testified there was about one hundred fifty acres covered with brush. Under the terms of the leasing agreement the defendant was to ''clear and put into cultivation as many acres of brush lands as he is able to and can afford to clear and cultivate.'' The evidence as to the type of land involved was conflicting. The defendant testified the land was wet and marshy and that it was formed by the backwaters of beaver dams built in the creek bottom and was not worth clearing. The defendant attempted to use a tractor to clear the land in July 1947 and it mired down in the mud and had to be pulled out with a team. The plaintiffs admitted that the land was bottom land and wet at some seasons but denied that it was too wet to cultivate. In any event the evidence was uncontroverted that a bulldozer cleared the brush off thirty to forty acres in November when the land was partially frozen. The defendant piled some of the brush, burned that which was dry enough and plowed and planted about one acre. The defendant testified that he requested the plaintiffs to furnish him two fifty-pound cases of powder to blow out the stumps. Dr. Morris furnished him five pounds which was concededly an inadequate amount.

The foregoing summary of the evidence on the three propositions relied upon by the plaintiffs to uphold their action for cancellation demonstrates that there was sufficient evidence to sustain the trial court's findings for the defendant. This was a five-year lease whereby the defendant moved on a ranch that was admittedly run down. No fixed time was set for the completion of the fencing or the clearing of the brush. A reasonable time is therefore implied. 12 Am. Jur., Contracts, p. 854, sec. 299; 17 C. J. S., Contracts, sec. 503, p. 1063.

Defendant's testimony and that of other witnesses clearly shows that he did first things first. There was evidence that he made the ranch house habitable, built corrals and repaired the fences around the best land, that he exercised his judgment in rotating the crops and in determining whether or not the best interests of the cattle ranch would be best served by using the land for pasture, for hay, or for grain. Defendant was steadily increasing the amount of land fenced, was improving the farmstead and had attempted to clear some of the land. All of the work was not complete, all of the land was not fenced. But admittedly the primary business was caring for the herd of cattle and managing the cattle ranch. These other matters were not to be all done at once. There is ample evidence to warrant the trial court in finding that the defendant was performing the conditions of the leasing agreement.

The judgment is affirmed.

Mr. Chief Justice Adair and Associate Justices Angstman, Freebourn and Bottomly concur.

Rehearing denied May 20, 1949.

ON REHEARING

May 20, 1949

208 Pac. (2d) 1049

PER CURIAM.

The petition for rehearing in the above cause is denied.

MR. JUSTICE ANGSTMAN:

I concur in the order denying a rehearing for the following

reasons: The petition for rehearing complains that the trial court and this court have made a new contract for the parties. I think this is not so.

The paragraphs of the lease upon which the appellants rely are set forth in the opinion. This was a lease for five years. It does not specify the time in which the fencing must be completed. The tenant could comply with the terms of the lease by completing the fencing at any time before the expiration date. The tenant still has two years in which to complete the fencing of the forty acres before he is in default on the fencing feature of the agreement.

The provision relating to grain requires the tenant to "till and cultivate the lands that have been heretofore tilled and cultivated." There would be sufficient or at least substantial compliance if the tenant planted the same number of acres into grain that had "heretofore been tilled and cultivated." The lease was drawn in February 1945. "Heretofore" refers to the period before 1945. In 1944 seven acres were planted to grain. If that year be taken as a measure, and it is the only year before 1945 of which there is any record of the acreage of grain planted, then the tenant has complied with the lease. Sixteen acres were planted in 1945, sixteen in 1946 and four in 1947. That is thirty-six acres in three years, whereas the maximum requirement under the contract was only for 35 acres in five years.

The provisions in the lease relating to clearing the brush only require the tenant during the term of the lease to "clear and put into cultivation as many acres of brush lands as he is able to and can afford to clear and cultivate." To place the tenant in default on this score, the burden of proof was upon the appellants to prove that the tenant was "able" and "could afford" to clear more land than he did. There is evidence to sustain the trial court's finding that this burden was not sustained.

MR. JUSTICE BOTTOMLY:

I concur in the above views of Mr. Justice Angstman.