No. 93-637

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

SPAIN-MORROW RANCH, INC., a Montana
corporation, and ROGER VAN DYKEN, Lessee,

Plaintiffs and Respondents,

v.

LAWRENCE E. WEST and IRIS J. WEST,
husband and wife, and CMC HEARTLAND
PARTNERS,

Defendants and Appellants.



FILED

APR 12 1994

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin,
                The Honorable Larry W. Moran, Judge presiding.


COUNSEL OF RECORD:

        For Appellants:

                Wayne Jennings, Attorney at Law,
                Bozeman, Montana

        For Respondents:

                Edmund P. Sedivy, Jr., and Lynda S. Weaver,
                Morrow, Sedivy & Bennett, Bozeman, Montana


                        Submitted on Briefs:  March 24, 1994

                                Decided:  April 12, 1994

Filed:

_____
                Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Plaintiffs Spain-Morrow Ranch, Inc., and Roger Van Dyken filed a complaint in the Eighteenth Judicial District Court in Gallatin County against defendants Lawrence E. West, Iris J. West, and CMC Heartland Partners to quiet title to a parcel of land and set aside a tax deed delivered to Lawrence West and Iris West. Wests counterclaimed to quiet title in their favor. The District Court granted Spain-Morrow Ranch, Inc., and Roger Van Dyken's motion for summary judgment and denied Wests' motion for summary judgment. We affirm the judgment of the District Court.

The dispositive issue on appeal is whether the District Court properly concluded that plaintiffs were occupants of the abandoned railroad right-of-way, and therefore, entitled to notice of the pending issuance of a tax deed.

## FACTUAL BACKGROUND

The land which is the subject of this dispute consists of 3.27 acres of railroad right-of-way abandoned in 1978 by the Chicago, Milwaukee, St. Paul and Pacific Railroad Co. The 100-foot-wide strip of land runs north and south through an agricultural parcel currently owned by Spain-Morrow Ranch, Inc., and farmed by its lessee, Roger Van Dyken. They have operated under a lease agreement since 1968.

In legal proceedings for its reorganization, the Chicago, Milwaukee, St. Paul and Pacific Railroad Co. received authority to abandon its former railroad line in Gallatin County, Montana on May 8, 1978. CMC Heartland Partners is the successor in interest

2

to the railroad, but did not claim any right, title, or interest in the property in this proceeding.

Gallatin County acquired an interest in the right-of-way by a tax sale certificate on July 12, 1986. On August 3, 1992, Lawrence West and Iris West tendered $223.17 to satisfy delinquent taxes and received an assignment of the tax sale certificate from Gallatin County. On September 10, 1992, Wests filed an affidavit of proof of service of notice of pending tax deed which identified CMC Heartland Partners as an owner to whom notice was required and given. Wests further identified the right-of-way land as unoccupied. No notice was given to Spain-Morrow or Van Dyken. Gallatin County issued a tax deed to Wests on October 22, 1992.

Spain-Morrow and Van Dyken filed their complaint on January 29, 1993. They alleged that they possessed and occupied the right-of-way land and that Wests' failure to provide them with notice upon application for a tax deed rendered the tax deed void. Spain-Morrow further alleged ownership in fee simple of the right-of-way land as evidenced by a warranty deed recorded at the Gallatin County Clerk and Recorder's office.

The District Court filed a notice of entry of default against CMC Heartland Partners on April 22, 1993. On October 27, 1993, the District Court granted Spain-Morrow and Van Dyken's motion for summary judgment based on its determination that Spain-Morrow and Van Dyken were "occupants" of the right-of-way and further, that Spain-Morrow was an "interested party." The District Court concluded that Wests' failure to comply with the statutory notice

3

requirement deprived Spain-Morrow and Van Dyken of their redemption rights and declared the Wests' tax deed void as a matter of law.

## STANDARD OF REVIEW

Our review of a summary judgment order is *de novo*. *Minnie v. City of Roundup* (1993), 257 Mont. 429, 431, 849 P.2d 212, 214. Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c), M.R.Civ.P. The initial burden is on the moving party to establish that there is no genuine issue of material fact; and once met, the burden shifts to the party opposing the motion to establish otherwise. *Thelen v. City of Billings* (1989), 238 Mont. 82, 85, 776 P.2d 520, 522.

Did the District Court properly conclude that Spain-Morrow and Van Dyken were occupants of the abandoned railroad right-of-way, and therefore, entitled to notice of the pending issuance of a tax deed?

The procedure for obtaining an ownership interest in land sold for taxes is set forth in Title 15, Chapters 17 and 18 of the Montana Code Annotated. Section 15-18-111(1), MCA, provides:

> [R]edemption of a property tax lien acquired at a tax sale or otherwise may be made by the owner, the holder of an unrecorded or improperly recorded interest, the occupant of the property, or any interested party within 36 months from the date of the first day of the tax sale or within 60 days following the giving of the notice required in 15-18-212, whichever is later. [Emphasis added].

Section 15-18-212(4), MCA, provides:

4

> The notice required under subsections (1) and (2) must be made by certified mail, return receipt requested, to each interested party and <u>the current occupant</u>, if any, of the property. [Emphasis added].

The notice must provide "that a tax deed will be issued to the purchaser or assignee unless the property tax lien is redeemed prior to the expiration of the redemption period." Section 15-18-212(1)(b), MCA.

Wests contend that subsection (2) of § 15-18-111, MCA, applies in this case, rather than subsection (1). Subsection (2) pertains to "property subdivided as a residential or commercial lot" and does not give a right of redemption to "occupants." Wests argue that since the parcel in question contains less than 20 acres, it is a subdivision according to § 76-3-103(14), MCA, of the Montana Subdivision and Platting Act, and that since it was used as a railroad right-of-way, it is commercial property. However, we note that the deed which created the right-of-way is dated March 28, 1910, and that the subdivision statute relied on by Wests was not enacted until 1973. Section 76-3-206, MCA, of the same Act provides that it is not applicable to deeds executed prior to July 1, 1974. Furthermore, the railroad abandoned the right-of-way in 1978, and there is no indication in the record that it was ever used for commercial purposes since that date. The only evidence is that it has been used for agricultural purposes. In § 15-1-101(1)(d), MCA, which defines "commercial" when used in connection with taxation, "agricultural lands" are specifically excluded. Therefore, we conclude that the land in question was not a

5

"commercial lot," and that subsection (1), rather than subsection (2), of the redemption statute applied and required notice to the "occupant of the property."

Wests also argue that there are material facts in dispute which preclude dismissal of the case by summary judgment. They argue that when they inspected the railroad parcel before receiving the assignment in August 1992, it did not appear to be occupied. In an affidavit, Irene West stated that during the on-site inspection, she observed the right-of-way to be clearly distinguishable from either of the adjoining grain crops, and that the right-of-way consisted of grass and weeds which showed no signs of tilling, cultivation, plowing, or other agricultural activity. She observed no cattle in the field, but noted the irrigation wheel line stretching across the entire field, including the former right-of-way. She stated that in November 1992 she observed that someone had begun to plow the right-of-way parcel.

Spain-Morrow produced affidavits establishing that since 1978 it has removed the old railroad fence and posts and has gradually reclaimed the railroad bed through removal of rock and leveling. They stated that since 1990 Spain-Morrow and Van Dyken have treated the railroad parcel and agricultural parcels as one contiguous field for both crops and pasture. The affidavits also established that the parcel is, and during all relevant times was, enclosed by Spain-Morrow's fence and was irrigated.

Wests introduced photographs of the property taken during the first week of November 1992, and Spain-Morrow introduced

6

photographs taken on November 11, 1992. These photographs clearly show that there were no buildings on the land; that the field, including the railroad parcel, was completely surrounded by fence; that there are cattle grazing on the entire field; and that Spain-Morrow's irrigation equipment passes over the former right-of-way.

In his affidavit, Van Dyken accounts for the different appearance of the railroad parcel, when observed by Mrs. West, by stating that it was heavily infested with weeds, quack grass, and gravel which prevented high-yield crop production, but that in the years 1991 and 1992, the railroad parcel was seeded in barley. The barley was harvested by raising the header on the combine to leave as much of the underlying quack grass as possible. The parcel was then treated with herbicide to kill the quack grass, and later, cattle were pastured on the whole field.

The District Court found that Spain-Morrow and Van Dyken were occupants of the property during the time Wests' applied for the tax deed based on the following visible signs:

1.      Removal by plaintiffs of the old railroad fences and the leveling of the former railroad bed to integrate with plaintiffs' adjoining lands;

2.      Placement of fencing around the perimeter of the entire parcel, including the abandoned right-of-way;

3.      Placement of a wheel-driven irrigation system spanning the entire parcel, including the abandoned right-of-way; and

7

4. Planting, harvesting, pasturing, and general farming of the abandoned right-of-way in concert with plaintiffs' adjoining land.

We conclude that these findings were uncontroverted by substantial evidence and do establish occupancy.

Wests rely on our prior decisions in *Van Voast v. Blaine County* (1946), 118 Mont. 375, 167 P.2d 563, and *Shumaker v. Tracy* (1953), 126 Mont. 477, 253 P.2d 1053, for the proposition that agricultural use of land alone is insufficient to establish occupancy. However, the facts in those cases are distinguishable from the facts in this case.

In *Van Voast*, the person who claimed to "occupy" the land for which a tax deed was issued had leased the land for grazing cattle. However, there was evidence that the land was

> unenclosed, unimproved, and uncultivated grazing land located in what is called "open country" where everyone ran their livestock and that the cattle and horses of various persons, including those of plaintiff as well as those of his neighbors, roamed and grazed thereon.

*Van Voast*, 167 P.2d at 565. While the plaintiff had at one time erected some fencing, it did not completely enclose the subject property, and by the time in question, had deteriorated to the point of being ineffective. Furthermore, by the time in question, the lease pursuant to which Van Voast obtained his right to use the grazing land had expired. By then he had obtained other pasture land for grazing and this Court simply concluded that there was insufficient evidence to establish that he remained in possession

8

of the property after the expiration of his lease. The facts in that case are strikingly different from those in this case where the right-of-way had been integrated with plaintiffs' ranching operation, had been completely fenced, was irrigated, and was being used for agricultural purposes at the time that notice should have been sent. We conclude that *Van Voast* is not inconsistent with our holding in this case.

Likewise, in *Shumaker*, the evidence established that while the property may have been used for grazing, it was not completely fenced and there was no evidence of other agricultural improvements to the land. This Court held that a fence on one side of the property and occasional grazing were not sufficient indicia of occupancy to put the sheriff on notice that the person who claimed to be the occupant was entitled to be notified of the pending tax deed. Improvements to this land, on the other hand, provided clear notice that it was occupied. In fact, nine days after the tax deed was issued in this case, Lawrence West called Louis Spain, president of Spain-Morrow, to notify him he had acquired an interest in the land by tax deed and offered to sell the land to Spain-Morrow for $18,000. He advised Spain that if he was not interested in buying the strip for that amount, he would sell it to some other "s.o.b." for building a house. Apparently after the tax deed was acquired, West had no doubt that Spain-Morrow would have an interest in continued occupation of the land. The facts in this case are significantly different than those in *Shumaker*.

9

We conclude that the uncontroverted facts were sufficient to establish that plaintiffs occupied the land for which a tax deed was issued to Wests at a time when notice was required to the property's occupants. In recent decisions, we have required that the procedural steps set forth in tax deed statutes be strictly followed. *Moran v. Robbin* (Mont. 1993), 863 P.2d 395, 50 St. Rep. 1417. Because Spain-Morrow and Van Dyken were occupants of the abandoned railroad right-of-way, they were entitled to notice of the impending tax deed. Because Wests failed to give proper notice to Spain-Morrow Ranch, Inc., or Roger Van Dyken, the District Court correctly concluded that the tax deed issued to Wests was void. Because CMC Heartland, the record owner of the property in question, failed to appear and its default was entered, the District Court correctly granted summary judgment to plaintiffs and quieted title in favor of Spain-Morrow Ranch, Inc.

Based upon our previous discussion and conclusions, we also conclude that the District Court correctly denied Wests' motion for summary judgment.

The judgment of the District Court is affirmed.

_____
Justice

10

We concur:

_____
Chief Justice

_____

_____

_____
Justices

April 12, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Wayne Jennings
Attorney at Law
P.O. Box 1625
Bozeman, MT 59715

Edmund P. Sedivy, Jr.
Morrow, Sedivy & Bennett, P.C.
P.O. Box 1168
Bozeman, MT 59771-1168

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy