No. 94-607

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

REALTY TITLE COMPANY, INC.,
A Montana Corporation,

       Plaintiff, Counterclaim Defendant
          and Respondent,

   -vs-

FRANCIS M. TINDALL,

       Defendant, Counterclaimant,
         Crossclaimant and Appellant,

    and

JACK K. MORGENSTERN,

       Defendant, Counterclaimant,
         Crossclaimant and Respondent.

FILED

MAY 4 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Tenth Judicial District,
             In and for the County of Fergus,
             The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Jack R. Stone, Attorney at Law, Lewistown, Montana

      For Respondents:

      James L. Stogsdill, Attorney at Law, Lewistown,
      Montana (for Realty Title)

      William E. Berger; Wilkins and Berger, Lewistown,
      Montana (for Morgenstern)

Submitted on Briefs:  March 30, 1995

Decided:  May 4, 1995

Filed:

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

This is an appeal from and order on motions for summary judgment of the Tenth Judicial District Court, Fergus County. We affirm.

The sole issue on appeal is whether the District Court abused its discretion in concluding that Jack Morgenstern (Morgenstern) was entitled to exercise the prepayment privilege provided in his contract for deed with Francis Tindall (Tindall).

On January 31, 1980, Tindall and Morgenstern entered into a contract for deed whereby Tindall sold Morgenstern certain real property. Attached to the contract was an amortization schedule (Schedule A) that set forth payments and designated principal and interest. The contract specifically allowed the purchaser to prepay the mortgage. On January 4, 1993, Morgenstern exercised his prepayment privilege by paying $19,899.22 to Realty Title Company, Inc. (Realty Title), the escrow agent for this contract for deed. That amount represented the full principal and interest due at that time as indicated by Schedule A, and escrow service fees. Realty Title delivered the prepayment to Tindall and the proper title, etc., to Morgenstern. Tindall attempted to return the payment to Realty Title, claiming, among other things, that the contract for deed was reinstated, that Schedule A should not be followed, and that Morgenstern was in default. Realty Title filed a complaint of interpleader to force Tindall and Morgenstern to resolve the conflict so it could complete its escrow responsibilities without incurring liability. Both Tindall and Morgenstern filed cross-

2

claims and counterclaims.

The contract for deed contains the following relevant provisions:

PURCHASE PRICE

1. The purchase price herein specified and which Purchaser agrees to pay and Seller agrees to accept as payment in full for said real and personal property is the sum of SEVENTY THOUSAND AND NO HUNDREDS DOLLARS ($70,000.00) payable as set forth on Schedule "A" attached hereto and made a part hereof for all intents and purposes, together with interest at the rate of ten percent (10%) per annum on the unpaid principal balance.

. . .

3. The purchaser shall have the right and priviledge [sic] of prepaying up to 29% of the unpaid balance of the original purchase price, together with any unpaid interest accrued to the time of such prepayment at any time after the fifth-year payment is paid and received; provided that no more than 29% of the total purchase price may be paid in any one year.

From 1981 to 1993 when Morgenstern made his final payment, the parties followed all contractual provisions, including Schedule A, without complaint or challenge by any party. In January 1993, Morgenstern exercised his prepayment privilege by tendering a check for $19,899.22, which represented payment of outstanding principal plus accrued interest and escrow service fees. Tindall argues that the January 4, 1993 payment was not sufficient, comparing that payment with usual amortization. Tindall's arguments are not tenable.

The parties clearly intended Schedule A to govern payments, including allocation of principal and interest and the unpaid balance. Paragraph 3, quoted above, permits prepayment with certain limitations. The language and intent of the contract is

3

clear. We have held that:

> [w]here the language of a written contract is clear and unambiguous there is nothing for the court to construe; the duty of the court is simply to apply the language as written to the facts of the case, and decide the case accordingly. [Citations omitted.] Courts have no power to change the contract or the express language used. [Citation omitted.]

Bain v. Williams (1990), 245 Mont. 228, 231-32, 800 P.2d 693, 695. The contract in the instant case is clear. The prepayment provision and Schedule A are the contract's controlling provisions and were followed by all parties until Tindall returned Morgenstern's final payment. While the contract may be poorly worded in parts, it is not ambiguous nor are there any provisions requiring construction or interpretation. The terms of the contract are clear. Tindall received what he bargained for.

Our standard of review on a grant of summary judgment is the same as that of a trial court. Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214. "Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law." Spain-Morrow Ranch, Inc. v. West (1994), 264 Mont. 441, 444, 872 P.2d 330, 331-32. We hold that the contract is clear, as evidenced by the contractual language and the parties' observance of that language since 1981. The District Court correctly concluded that there is no genuine issue of material fact between the parties. Morgenstern was entitled to judgment as a matter of law.

Affirmed.

Pursuant to Section I, Paragraph 3 (c), Montana Supreme Court

4

1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter, and West Publishing Company.

_____
Justice

We **concur:**

_____
Chief Justice

_____

_____

_____
Justices