No. 95-230

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

AGRICULTURAL EXPRESS, INC.,
a Montana Corporation,

        Plaintiff and Respondent,

    v.

GUY R. MILLER,

        Defendant and Appellant.

FILED

SEP 08 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        Henry R. Crane, Attorney at Law, Missoula,
Montana

    For Respondent:

        Scott G. Gratton; Brown Gerbase, Cebull, Fulton,
Harman & Ross, Billings, Montana


Submitted on Briefs:  August 17, 1995

Decided:  September 3, 1995

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Guy R. Miller (Miller) appeals from the judgment entered by the Thirteenth Judicial District Court, Yellowstone County, on its order granting summary judgment in favor of Agricultural Express, Inc. (Ag Express) and denying his cross-motion for summary judgment. We affirm.

The issue on appeal is whether the District Court erred in granting Ag Express' motion for summary judgment and in denying Miller's motion for summary judgment.

The facts of this case are relatively straightforward and essentially undisputed. Miller is a professional truck driver; Ag Express is engaged in the trucking business. In the autumn of 1993, the parties entered into two written agreements. Under a Loan and Security Agreement (Agreement), Miller borrowed $71,855.95 from Ag Express, to be repaid in 84 semi-monthly installments of a sum certain, which included principal and interest. The purpose of the Agreement was to enable Miller to purchase a 1994 Peterbilt truck from Ag Express. The Agreement provided that the truck was collateral for Miller's payment of the loan and that Ag Express retained a security interest in the truck. Under an Owner Operator Agreement, Miller undertook to operate the truck exclusively for Ag Express' trucking business for the full term of the truck purchase. This agreement provided Ag Express with the services of both Miller and the truck, and gave Miller a means of generating income during the period of the loan and payments.

2

Miller made the required payments for a period of some months. In July of 1994, Miller terminated the Owner Operator Agreement. Miller did not make loan payments after that time and did not return the truck or offer to return the truck.

In November of 1994, Ag Express filed a complaint against Miller for repossession and claim and delivery. Miller did not file an answer; instead, he moved for summary judgment, asserting entitlement to judgment as a matter of law. Miller argued that the loan was void under the Montana Consumer Loan Act because Ag Express had violated certain licensing and disclosure requirements contained in § 32-5-303 et seq., MCA. He also argued that, because the Agreement was a retail installment contract under § 31-1-202 et seq., MCA, which did not meet the requirements of § 31-1-231, MCA, he was entitled to rescission of the Agreement pursuant to § 31-1-232, MCA. Ag Express filed a cross-motion for summary judgment, asserting its entitlement to possession of the truck under the Montana Uniform Commercial Code (MUCC).

After full briefing and oral argument on the parties' motions, the District Court denied Miller's motion for summary judgment, granted Ag Express' motion and ordered Miller to turn over the truck to Ag Express. Thereafter, the court entered an order correcting clerical mistakes in its earlier order and memorandum. The court then entered its judgment and order of delivery, certifying the judgment as final for purposes of appeal under Rule 54(b), M.R.Civ.P. Miller appeals.

3

Did the District Court err in granting Ag Express' motion for summary judgment and in denying Miller's motion for summary judgment?

Our review of an order granting or denying a motion for summary judgment is de novo and we utilize the same criteria as the district court. Spain-Morrow Ranch, Inc. v. West (1994), 264 Mont. 441, 444, 872 P.2d 330, 331-32. Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.; Spain-Morrow, 872 P.2d at 331-32.

Here, the District Court granted Ag Express' motion for summary judgment and denied Miller's motion for summary judgment based on its conclusions that the MUCC entitled Ag Express to immediate possession of the property which secured Miller's obligation as a matter of law and that the Montana Consumer Loan Act does not apply to the transaction at issue. The court also implicitly concluded that the Agreement was not a retail installment contract under the Montana Retail Installment Sales Act (Retail Act) because the transaction was for a business or commercial--rather than a consumer--purpose. We review conclusions of law to determine whether they are correct. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

We note at the outset that Miller does not assert error with regard to the District Court's conclusion concerning the Montana Consumer Loan Act. Nor does Miller assert error with regard to the court's basic conclusion that the MUCC applies to the transaction at issue. He argues only that the District Court erred in

4

implicitly concluding that the Retail Act does not apply.

The entirety of Miller's argument is based on the statutory definitions contained in the Retail Act. He argues that, under those definitions, the Retail Act clearly is applicable to the truck transaction and the Agreement between himself and Ag Express. We disagree.

The Retail Act defines a retail installment contract as "an agreement evidencing a retail installment transaction . . . under which a buyer promises to pay in one or more deferred installments the time sale price of goods or services, or both." Section 31-1-202(n), MCA. A "retail installment transaction" is defined as "a written contract to sell or furnish . . . goods or services by a retail seller to a retail buyer . . . ." Section 31-1-202(o), MCA. A "retail seller" is defined as "a person who sells goods or furnishes services to a retail buyer. . . ." Section 31-1-202(p), MCA. Finally, a "retail buyer" is defined as "a person who buys goods or obtains services from a retail seller. . . ." Section 31-1-202(l), MCA.

These definitions are, at best, circuitous and incomplete. The word "retail" is contained in each definition necessary to resolve both whether a contract is a retail installment contract and whether a transaction is a retail installment transaction. Yet, the word "retail" is never defined. Thus, we cannot ascertain from the plain language of the Retail Act whether the legislature intended it to cover agreements and transactions of the type presently before us or, in the alternative, whether the legislative

5

intent was to limit the Retail Act to sales/purchases of "consumer" goods, usually defined in such protective statutory schemes as goods purchased primarily for personal, family or household use rather than for business purposes. See, e.g., 15 U.S.C. § 1602(h) (defining "consumer," used with reference to credit transactions under the federal Truth in Lending Act, as relating to transactions involving money or property primarily for personal, family or household purposes); Mid-Wood, Inc. v. Digby (Ohio App. 1982), 451 N.E.2d 526 (goods purchased for use in commercial farming business not within purview of Ohio's retail installment sales act because purchase was for a business or commercial purpose); Rigdon v. Walker Sales & Service, Inc. (Ga. App. 1982), 288 S.E.2d 711 (Georgia's retail installment and home solicitation sales act not applicable to purchase of combine for commercial farming operation because combine not personalty purchased primarily for personal, family or household use).

As noted above, Miller relies entirely on the statutory definitions which we determine are not dispositive here. He does not present legislative history, cases from other jurisdictions, or other authorities supporting his contention that the legislature intended the Retail Act to apply to the transaction and Agreement presently before us. As a result, we conclude that Miller has not met his burden of establishing error by the District Court.

We hold that the District Court did not err in granting Ag Express' motion for summary judgment and in denying Miller's motion for summary judgment.

6

Affirmed.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

7