No. 97-402

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 45


EDWARD ISERN, a/k/a
EDWARD H. ISERN, III,

Plaintiff and Appellant,

v.

KAREN SUMMERFIELD, a/k/a
K. SUMMERFIELD, DACE HAWKINSON,
B & D PROPERTIES, DANIEL SUMMERFIELD
and TRACY SUMMERFIELD,

Defendants and Respondents.


APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
Honorable Ed McLean, Judge Presiding.


COUNSEL OF RECORD:

For Appellant:

W. Carl Mendenhall, Worden, Thane & Haines, Missoula,
Montana

For Respondents:

James A. Bowditch, Milodragovich, Dale, Steinbrenner &
Binney,
Missoula, Montana


Submitted on Briefs:  January 15, 1998

Decided: March 4, 1998

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶1     In this case, we reverse a decision of the Fourth Judicial District Court, Missoula County, which upheld the validity of a tax deed to real property.

¶2     The issue is whether defects in and omissions from the statutory tax deed process as followed by Missoula County and the Defendants and Respondents deprived Missoula County of jurisdiction to issue the subject tax deed and render the deed void.

¶3     In 1990, Edward Isern purchased a residence at 4217 Timberlane in Missoula, Montana.  The full legal description of the property is:

> Lot 9 in Block 6 of LINCOLNWOOD ADDITION NO.
> 5, a platted subdivision in Missoula County,
> Montana, according to the official recorded
> plat thereof.

Isern failed to timely pay $787.38 in second half taxes on the property for 1991.

¶4     Missoula County held a tax sale of the property in July 1992.  There were no bidders.  Missoula County continued to assess taxes against the property for the years 1992, 1993, 1994, and 1995.  On November 20, 1995, upon payment to the county of $9,460.51 representing delinquent taxes, penalties, interest, and costs, the county assigned a tax sale certificate on the property to "Dace Hawkinson-K Summerfield."  On February 2, 1996, the county issued a tax deed to "Dace Hawkinson & Karen Summerfield."

¶5     Isern subsequently attempted to redeem the property by tendering a check for the delinquent taxes, penalties, and interest then due, but Missoula County refused to accept his check.  Isern filed this action in March 1996, seeking to set aside the tax deed and to quiet title to the property in himself based upon statutory defects, omissions, and deficiencies in the tax deed process used. In addition to Hawkinson and Summerfield, Isern named as defendants other persons or entities which he believed might claim some right or title to the property.

¶6    Following discovery, the parties filed cross-motions for summary judgment.  The District Court denied Isern's motion, and granted the Defendants summary judgment. Isern appeals.

Discussion

¶7    Do defects in and omissions from the statutory tax deed process as followed by Missoula County and the Defendants and Respondents deprive the county of jurisdiction to issue the subject tax deed and render the deed void?

¶8    This Court's standard of review of a summary judgment is the same as that initially employed by the District Court--whether there exist genuine issues of material fact, and, if not, whether the moving party is entitled to judgment as a matter of law.  See Rule 56(c), M.R.Civ.P., and Estate of Strever v. Cline (1996), 278 Mont. 165, 170, 924 P.2d 666, 669.  In this case, the parties agree there are no issues of material fact.

¶9    Both Montana's Constitution and the Constitution of the United States provide that no person shall be deprived of property without due process of law.  U.S. Const. Amend.  XIV,   1; Art. II, Sec. 17, Mont. Const. In a tax deed case, a citizen's right to own property is challenged by the government and the assignee of a tax sale certificate, almost always for a payment by the assignee to the government of far less than the property's full value.

¶10  Notwithstanding the requirements of due process, Defendants and Respondents cite Cullen v. Western Mortgage & Warranty Title Co. (1913), 47 Mont. 513, 525, 134 P. 302, 305, for the proposition that it is not necessary that tax deed proceedings "be criticised with microscopic nicety" or that tax deeds be rejected for "every insignificant departure from verbal precision." However, in more recent cases than Cullen, this Court has firmly maintained the position that procedural requirements set forth in tax deed statutes must be strictly observed.  See, e.g., Lowery v. Garfield County (1949), 122 Mont. 571, 579, 208 P.2d 478, 483 ("[a]pplication for a tax deed is a statutory proceeding and every requirement of the statute must be fully complied with"); Hudson v. McDonald (1987), 229 Mont. 426, 431, 747 P.2d 221, 224 ("[l]et the tax deed applicant be aware of [the tax deed statutes], and let him adhere to the letter thereof, particularly as to description of the property, the content of the

affidavits and notices, and the need for the determination of occupancy"); Spain-Morrow Ranch, Inc. v. West (1994), 264 Mont. 441, 447, 872 P.2d 330, 334 ("[i]n recent decisions, we have required that the procedural steps set forth in tax deed statutes be strictly followed").  Even typographical errors in a document may be sufficient grounds to set aside a resulting tax deed. Tax Lien Services v. Hall (1996), 277 Mont. 126, 133, 919 P.2d 396, 400.  We here reaffirm our position that because a property owner's fundamental interests are at stake in tax deed proceedings, such proceedings demand punctilious compliance with all statutory and procedural requirements.

¶11  The first step in the tax deed process under Montana's statutory scheme occurs on the third Monday of December and the third Monday of June of each year, when the county treasurer reports to the county clerk and recorder a list of all persons and property then owing taxes.  Section 15-16-301, MCA.  In Missoula County, the elected offices of county treasurer and county clerk and recorder have been combined into one office.  No delinquent list is made in Missoula County as is required under § 15-16-301, MCA.  Defendants and Respondents argue that preparing reports as between the treasurer and the clerk and recorder would be redundant and cost prohibitive, where, as here, those offices have been combined.  However, failing to follow the statutes cannot be justified by consolidation of elective offices. Notwithstanding consolidation of the offices, there still remain two distinct office functions, separate from each other, although administered by one elected county official.

¶12  Continuing with the statutory tax deed process, after the county clerk and recorder confirms the validity of the delinquent tax list pursuant to § 15-16-305, MCA, the county treasurer must publish or post a notice of pending tax sale.  The notice must comply with the requirements set forth at § 15-17-122, MCA, and a copy thereof must be filed with the county clerk pursuant to § 15-17-123, MCA.

¶13  The method of conducting a tax sale is prescribed at § 15-17-211, MCA.  Following the sale, and upon receipt from the buyer of all delinquent taxes, penalties, interest, and costs,  the county treasurer is to prepare a tax sale certificate containing the information listed at § 15-17-212, MCA.  The Missoula County clerk and recorder/treasurer testified by deposition that she does not prepare tax sale certificates for tax sales when Missoula County is the buyer of the property.  She did

not prepare a tax sale certificate in this case. Nor did Missoula County follow the alternative procedure established at § 15-17-214, MCA, for county purchases of tax deeds. That alternative procedure involves production of a list of all property remaining unsold at the tax deed sale. The Missoula County clerk and recorder/treasurer did not produce such a list. Defendants and Respondents argue that "wasteful and time-consuming paper copies" were "not necessary" because the offices of clerk and recorder and treasurer are combined in Missoula County. Again, this argument does not justify violation of statutory requirements.

¶14 The form for an assignment of a tax sale certificate by the county to a payor of the amount of the delinquent taxes, including penalties, interest, and costs, is provided at § 15-17-323, MCA. The procedure for then issuing a tax deed is set forth at Title 15, Chapter 18, Part 2, MCA. The clerk and recorder must give notice of the pending issuance of a tax deed, by certified mail, return receipt requested, to each interested party at "the address disclosed by the records in the office of the county clerk." Section 15-18-212(4), MCA. In applying a predecessor statute to § 15-18-212, MCA, this Court has ruled that a county clerk and recorder must seek addresses "easily ascertainable" in county records. Yellowstone Inv. and Dev. Co. v. Yellowstone County (1982), 201 Mont. 290, 297, 654 P.2d 508, 512.

¶15 In this case, the correct address of property owner Isern was easily ascertainable from the records of Missoula County. The county assessor's office had received notice of Spokane, Washington addresses for Isern in November 1994 and July 1995. The clerk and re-corder/treasurer testified by deposition that the county assessor's office should have provided the new addresses to her office. She admitted that the most current address was available to her by simply going across the hall to the county assessor's office. Yet the clerk and recorder/treasurer's office sent the notice of pending issuance of a tax deed to Isern at his former Missoula, Montana address on September 15, 1995, months after the newer addresses were in the county's records.

¶16 Defendants and Respondents contend that under Moran v. Robbin (1993), 261 Mont. 478, 863 P.2d 395, the alleged defects attributable to Missoula County are not relevant to the propriety of the issuance of a tax deed to Hawkinson and Summerfield. Defendants and Respondents claim that Missoula County's application for a tax deed was abandoned and superseded by their actions in

preparing and issuing the notice, proof of notice, and application for tax deed. We disagree. In Moran, we held that because the redemption dates provided in the first notice and the second notice of pending tax deed issuance differed, the second notice controlled and the first notice was deemed abandoned. Moran, 261 Mont. at 483-84, 863 P.2d at 399. That holding does not translate into a blanket removal of the requirement for strict compliance with all tax deed statutes; it relates only to multiple notices with different redemption dates. The interpretation of Moran proposed by Defendants and Respondents would wrongly allow counties and tax deed applicants to totally ignore all prior statutory requirements as long as the final notice was correct.

¶17   The form of a tax deed must be "in substance" as set forth at § 15-18-213, MCA. The form there providedincludes a statement that "the property tax lien has notbeen redeemed by .......... (name of former owner) or anyother person entitled to redeem it." Section 15-18-211(1), MCA, also requires that a tax deed must contain "a statement that the property tax lien was not redeemed during the redemption period provided in 15-18-111." The tax deed issued in this case contains no language whatsoever addressing this twice-repeated statutory requirement.

¶18   Section 15-18-211(1), MCA, also requires that a tax deed must contain the full legal description of the property. The full legal description of the subject property in this case is set forth above at paragraph 3. An abbreviated description of the property ("SUID # 1862006 Lincolnwood #5-Lot 9 Blk 6") was used in the tax deed issued to Hawkinson and Summerfield. The tax deed issued by Missoula County in this case did not contain the full legal description as required under § 15-18-211(1), MCA.

¶19   In Hudson, this Court set aside a notice of application for a tax deed that included an improperly abbreviated legal description and no identification of the county where the property was located. We reasoned that by failing to comply with statutory requirements the published description was fatally defective. Hudson, 229 Mont. at 431, 747 P.2d at 223-24. The same reasoning applies to a tax deed, particularly since § 15-18-211(1), MCA, specifically requires the "full legal description" in the tax deed.

¶20   The District Court found, without detailed analysis, that the procedural defects in this case were either "minor clerical errors and/or non-substantive deviations

of specific statutory language," or "internal operating procedures and documentation of the County as a result of the County's present computerized system of record keeping." The court effectively concluded that none of the defects affected Isern's due process rights. We disagree. Our case law has established that tax deed statutes must be strictly followed. Where, as here, failure to follow statutory requirements has been clearly established, we must conclude that due process rights have been abridged. The argument that advances in computerized record keeping justify deviation from the procedures currently prescribed by statute is a matter properly addressed not to this Court, but to the Legislature, with proposals for statutory amendment.

¶21 Given the requirement of strict compliance with statutory procedures for issuing a tax deed, and without passing judgment on the significance of other errors and omissions cited by Isern but not discussed herein, we hold that the errors and omissions discussed above void the subject tax deed issued by Missoula County to Dace Hawkinson and Karen Summerfield. We therefore reverse the summary judgment entered by the District Court. This case is remanded for further proceedings consistent with this Opinion.

/S/ J. A. TURNAGE

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ WILLIAM E. HUNT, SR.

Justice W. William Leaphart, dissenting.

¶22 Isern appeals to this Court asserting that Montana law requires strict compliance with statutory requirements of the code in issuing tax deeds. This Court has reasoned that

> [s]trict compliance with the statutes is required because the owner risks losing his or her real property for the failure to pay the property taxes. Often, very valuable property is lost for a mere pittance. . . . "The proceedings are to a large extent ex parte, the owner is an unwilling party, is seldom, if ever, present at the sale, is generally ignorant of it, and the tax almost always bears a very small proportion to the value of the property sold. Upon these considerations it has generally been held that proceedings on tax sales should strictly comply with the statute."

Moran v. Robbin (1993), 261 Mont. 478, 482-83, 863 P.2d 395 (quoting Rush v.

Lewis and Clark County (1908), 36 Mont. 566, 569, 93 P. 943, 944). However, this policy must be considered in light of the State's interest in the effective collection of
property taxes.

¶23  As Respondents assert, Montana relies heavily on revenue received from real property tax assessments. This revenue funds public schools, transportation, and other expenditures necessary for effective operation of the county. To invalidate tax
deed proceedings on the purely technical grounds asserted by Isern eviscerates the tax
deed process and frustrates a county's ability to obtain necessary operational revenue.

¶24  The statutory procedure drafted by the legislature and set forth in Title 15 seeks to embody the protections of the United States and Montana Constitutions which provide that no person shall be deprived of property without due process of law. U.S. Const. amend. XIV, § 1; Mont. Const. Art. II, Sec. 17. Due Process in the broad sense requires that "one deprived of his property must be given notice and an opportunity to defend." Ball v. Gee (1990), 243 Mont. 406, 413, 795 P.2d 82, 86. Title 15 sets forth a standard procedure that is designed to assure that a tax deed will
not issue unless the property owner has first been afforded due process of law.

¶25  The Court holds that "[w]here . . . failure to follow statutory requirements has been clearly established, we must conclude that due process rights have been abridged." However, I agree with Respondents that, in determining the validity of a tax deed, the ultimate question to be resolved is whether the property owner (Isern) was deprived of his property without due process of law. In other words, did the slight deviations from the Title 15 procedure necessarily deprive Isern of his property
without due process of law? In blindly requiring strict compliance, the majority ignores the fact that, despite technical discrepancies, Isern received due process, that
is, both notice and an opportunity to defend (to redeem).

¶26  Realizing that the strict compliance rule essentially made the issuance of tax titles impossible thereby hampering the state's ability to collect taxes, the Supreme Court of Florida responded by characterizing some statutory tax deed provisions as directory and some as obligatory depending on their due process ramifications. See Dawson v. Saada (Fla. 1992), 608 So.2d 806. Likewise, Indiana requires strict compliance with essential procedures, but allows substantial compliance with procedures that do not effect due process rights. See Ind. Code § 6-1.1-25-16 (1997); see also Anton v. Davis (Ind. App. 1995), 656 N.E.2d 1180. This Court, however, has strayed from its holding that "[e]very essential and material step required by the tax deed statutes must be strictly followed," Moran, 863 P.2d at 398 (emphasis added) (citing Stanford v. Rosebud County (1991), 251 Mont. 128, 134, 822 P.2d 1074, 1077-78), in favor of a rule requiring strict compliance with all steps
of the statutory process.

¶27 The Court, in support of its rule of absolute strict compliance, characterizes Tax Lien v. Hall as standing for the proposition that even typographical errors in a document may be sufficient grounds to set aside a resulting tax deed. In Hall, the typographical error was in the description of the property in a published notice. In invoking Hall, the Court fails to acknowledge that Hall was denied notice and thus, due process, because the typographical error made it impossible to identify the property. This is a stark contrast to the present case in which Isern has not alleged prejudice or denial of his right to due process resulting from the "errors" in the tax deed process. He alleges only that Respondents and the county failed to comply with all the technicalities of the tax deed process irrespective of whether they affected his rights to due process.

¶28 This Court has held that a critical element in the process of applying for a tax deed is the giving of notice by the tax deed applicant to the owner of the real property. We have held that " '[t]he giving of notice is jurisdictional; if the legal requirements with respect to notice are not complied with, a county treasurer may not legally issue a tax deed.' " Tax Lien v. Hall (1996), 277 Mont. 126, 133, 919 P.2d 396, 400 (quoting Moran, 863 P.2d at 398). Indeed, when this Court has determined that failure to strictly comply with statutory procedures denies a county of jurisdiction to issue a tax deed, the noncompliance has almost exclusively related to the failure to provide the property owner with proper notice of her rights.

¶29 The agreed facts in this case indicate that on September 15, 1995, the county, in compliance with 15-18-212, MCA, sent notice of pending tax deed issuance to Isern via certified mail and also published the notice in the Missoulian. This notice stated that Isern's 36-month period of redemption had expired, notified Isern that his 60-day period of redemption would expire on November 14, 1995 and explained that if Isern failed to redeem the property during that time a tax deed would issue. Isern did not respond to the county's notice. Isern asserts that this notice was deficient because the county did not send the notice to Isern's Spokane address. The Court agrees, holding that the county had a duty to go across the hall to the to the county assessor's office to obtain the Spokane address. However, as set forth below, Isern's argument should fail as he was not denied notice or due process.

¶30 Summerfield purchased the county's tax lien on November 20, 1995 (5 days after Isern's redemption period under the county's notice expired), and on November 28th Summerfield mailed a new notice of pending tax deed issuance to Isern pursuant to § 15-18-212, MCA. This second notice indicated that Isern had yet another 60 days, until January 30, 1996, to redeem the property. This notice was sent via certified mail addressed to Isern and "occupant" at the address of the subject property in Missoula, to Isern at another listed Missoula address and to Isern's address in

Spokane, Washington. Delivery was attempted three times (December 1, 6, and 16). The letter remained unclaimed and was returned to Summerfield on December 22nd. Isern's wife, however, acknowledged that she and Isern received post office notification of certified letters at their Spokane residence, but refused to claim them.

¶31 As a result of Isern's failure to acknowledge service at any address of record, Summerfield also elected to notify Isern of the pending tax deed issuance by publication pursuant to § 15-18-212(5), MCA. On December 1st and 8th she published a further Notice to Interested Parties of Pending Tax Deed Issuance in the Missoulian and filed the additional notice with the clerk on December 29th. As a result of Respondents' notices of issuance of tax deed (via certified mail and publication), Isern received the benefit of an additional 60-day redemption period. Again, he did not choose to redeem the property. Accordingly, on January 31, 1996, Summerfield submitted her application for tax deed to the county. The treasurer issued a tax deed to Summerfield on February 2, 1996. Respondents and the county followed the essential and material steps in applying for and issuing the tax deed.

¶32 The Respondents argue that the second notice was, in effect, an "abandonment" of the county's notice and should control in accord with this Court's decision in Moran. In Moran, the purchaser of a tax deed sent notice via certified mail notifying the owner of the pending tax deed issuance. The purchaser elected also to publish the notice. The second, published notice stated a later redemption date than the first notice. This Court determined that the first, certified mail notice was abandoned and the second, published notice and date of redemption controlled. Moran, 863 P.2d at 399. In the present case, the Court rejects Respondents' reliance on Moran, stating: "That holding [Moran] does not translate into a blanket removal of the requirement for strict compliance with all tax deed statutes; it relates only to multiple notices with different redemption dates." I agree with Respondents that, under Moran, the notice providing the more generous redemption date supersedes all prior notices. However, even without Moran, Isern has failed to assert any damage, prejudice or violation of due process as a result of the county's notice. Even assuming that the county's notice was deficient, Respondents' subsequent notice gave Isern an additional 60-day redemption period beyond that provided by the county's notice. Therefore, I would hold that the Respondents' notice, sent to three addresses of record and published in the Missoulian, satisfied the requirements of § 15-18-212, MCA, and gave sufficient notice to Isern of his right to redeem the property. Isern has not alleged errors that deprived him of due process of law. He does not contest the fact that Respondents sent him notice of the pending tax deed at his Spokane address and that he had more time than allotted by the county's notice to redeem the property. He asserts only clerical errors that were not of a jurisdictional nature and did not deny him of notice or an opportunity to defend or redeem.

¶33 The Court has taken the strict compliance analysis to a new level by voiding a tax deed absent any showing of the slightest prejudice or denial of due process of law. The result is that a property owner who shirks his tax obligations and thwarts notice by actively avoiding his certified mail may later reclaim the property by

finding
any insignificant typographical or clerical error.

¶34  I would affirm the District Court's holding that the numerous errors cited by Isern were nothing more than insignificant clerical errors and slight procedural deviations which did not deny Isern due process of law.

                    /S/   W. WILLIAM LEAPHART


Justice Terry N. Trieweiler joins in the foregoing dissenting opinion of Justice W. William Leaphart.


                    /S/   TERRY N. TRIEWEILER