DA 14-0649

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 204

ZINVEST, LLC.,

       Plaintiff and Appellant,

   v.

DONNA L. ANDERSON,

       Defendant and Appellee.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
                    In and For the County of Carbon, Cause No. DV 12-71
                    Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           W. Scott Green, Patten, Peterman, Bekkedahl & Green, Billings, Montana

       For Appellee:

           D. Michael Eakin, Montana Legal Services Association, Billings, Montana

                             Submitted on Briefs:  May 20, 2015
                                   Decided:  July 21, 2015

Filed:

                                      Clerk

FILED

July 21 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0649

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Zinvest, LLC, appeals from the judgment of the Twenty-Second Judicial Court, Carbon County, nullifying its tax deed and quieting title in Appellee Donna L. Anderson. Zinvest asserts Carbon County properly complied with all statutory requirements when issuing the tax deed, challenging the District Court's determination that the county failed to strictly comply with those requirements. We affirm, addressing the following issue on appeal:

¶2 *Did the Carbon County Treasurer properly comply with the procedural requirements of the tax deed statutes?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Donna Anderson is the owner of improved property located at 23 Hayden Lane, Fromberg, Carbon County, described as:

> Tract 1 of Certificate of Survey No. 2041 FT, Carbon County, Montana, according to the official plat therof on file and of record in the office of the Clerk and Recorder of said County under Document No. 306963.

Anderson failed to pay taxes assessed for the property and on July 16, 2009, the Carbon County Treasurer conducted a tax lien sale for the property. The tax lien failed to sell, so the county acquired it pursuant to § 15-17-214(1), MCA ("[i]f no person pays the delinquent taxes . . . on the first day of the tax lien sale, the county is considered to be the purchaser").

¶4 On August 30, 2011, Zinvest mailed a Notice of Pending Assignment to Anderson to inform her of its intent to purchase the lien from the county if the taxes were not paid within two weeks. Following Anderson's failure to pay, Zinvest paid the taxes and

accompanying costs to purchase the lien. The Carbon County Treasurer issued an Assignment of Tax Sale Certificate to Zinvest and notified Anderson of the transaction.

¶5 After obtaining a property title guarantee pursuant to § 15-18-212(4)(a), MCA, Zinvest sent a "Notice that a Tax Deed May be Issued" on June 7, 2012, to Anderson, a third-party occupant of the property, and the Carbon County Treasurer. Zinvest filed proof of notice with the Carbon County Clerk and Recorder, and on August 14, 2012, after the redemption period ended and Anderson had failed pay the delinquent taxes, Zinvest applied for a tax deed, which was issued by the Carbon County Treasurer. Zinvest recorded the deed on August 14, 2012, and initiated a quiet title action. Zinvest's complaint was served upon Anderson on December 16, 2013, after which she filed her appearance and answer.

¶6 In February 2014, Zinvest and Anderson filed competing motions for summary judgment that contested whether the County Treasurer had complied with the requirements of the tax deed statutes. On April 10, 2014, the District Court granted Zinvest's motion, noting Anderson had "fail[ed] to provide any affidavits, sworn testimony, recorded or certified documents, or any other admissible evidence in support of [her] contentions." Anderson filed a motion to alter or amend the judgment, at which point the court learned it had entered its original judgment without benefit of Anderson's reply brief, which had been filed but not supplied to the court. Because the reply brief included attached evidence supporting Anderson's assertions that the tax deed statutes

3

had not been properly followed, the court vacated its original judgment and granted her motion for summary judgment. Additional facts are discussed below.

## STANDARDS OF REVIEW

¶7 We review a district court's grant of summary judgment de novo. *Showell v. Brosten*, 2008 MT 261, ¶ 9, 345 Mont. 108, 189 P.3d 1210. If there are no genuine issues of material fact, we must determine whether a district court correctly concluded the moving party is entitled to judgment as a matter of law. *Showell*, ¶ 9. In addition, a statutory interpretation is a conclusion of law, which we review to determine whether a district court has correctly interpreted the law. *Bitterroot River Protection Ass'n v. Bitterroot Conserv. Dist.*, 2008 MT 377, ¶ 70, 346 Mont. 507, 198 P.3d 219.

## DISCUSSION

¶8 *Did the Carbon County Treasurer properly comply with the procedural requirements of the tax deed statutes?*

¶9 When a property owner has become delinquent in paying property taxes, the tax due is a lien against the property assessed, subject to a tax lien sale after notice of the delinquency is given to the owner. Sections 15-16-403, 15-17-211, MCA. If payment of the delinquent taxes and costs does not occur on the first day of the sale, the county is deemed to be the purchaser of the tax lien. Section 15-17-214(1), MCA. Following a sale, the county treasurer "shall identify and list all property tax liens that were sold" and also "record that the county is the purchaser of all property remaining unsold. . . ." Section 15-17-214(2)(a), MCA. Under § 15-17-214(2)(b), MCA, the record of the property liens acquired by the county may be made by either "a separate tax lien sale

4

certificate of each property or by reference to the property as recorded in the list" of tax delinquent properties required by § 15-16-301, MCA. Section 15-17-212(1), MCA, itemizes the information that must be included in a tax lien sale certificate.[1] In *Isern v. Summerfield*, 1998 MT 45, ¶ 13, 287 Mont. 461, 956 P.2d 28, we described the "alternative procedure" of recording county purchases as "involv[ing] production of a list of all property remaining unsold at the tax deed sale."

¶10 The District Court reasoned that § 15-17-212, MCA, while generally describing what information must be contained in a tax sale certificate issued to a purchaser of a lien, does not explicitly address the procedure to be followed where the county is deemed to be the purchaser. The court held that such transactions must comply with the procedures in § 15-17-214, MCA, which requires the county to record its interest in the property by way of a tax lien sale certificate or another list. The court found that, while the property interest vests in the county by operation of law, a record of that acquisition was nonetheless statutorily required, reasoning that "[t]he requirement for recordation of a Tax Sale Certificate or other record of the county's acquisition of its interest in the property is not perfunctory, it is important because it completes the chain of title on the record." Determining that there was no evidence that either a tax lien sale certificate or a

---

[1] Specifically, § 15-17-212(1)(a)-(i), MCA, requires a tax lien sale certificate to include: a) the date of tax delinquency; b) the date on which the lien was sold at a lien sale; c) the name and address of the person to whom the taxes were assessed; d) a description of the property; e) the name and address of the purchaser; f) the amount paid to liquidate the delinquency, including a separate listing of the amount of delinquent taxes, penalties, interest, and costs; g) a statement that the certificate represents a lien on the property which may lead to the issuance of a tax deed; h) a statement specifying the date on which the purchaser will be entitled to a tax deed; and i) an identification number corresponding to the tax lien sale certificate number recorded by the county treasurer as required by § 15-17-213, MCA.

proper alternative list had been recorded by the county, the court entered judgment in favor of Anderson, concluding the county had failed to "punctiliously comply" with all statutory and procedural requirements of the tax deed statutes, citing *Isern*, ¶ 10.

¶11   At issue here are two documents prepared and signed by the Carbon County Treasurer:  1) an untitled document purporting to represent that Anderson's property had been struck off[2] to Carbon County, dated July 17, 2009, with attached listing (Untitled Document); and 2) an Assignment of Tax Sale Certificate dated September 19, 2011, from the County to Zinvest.  The Untitled Document states, in part:

> I, JANE SWANSON-WEBB, the Treasurer of the County of Carbon, State of Montana, do herby [sic] certify that at the sale of lands pursuant to the tax assessment for the year 2008, in the County of Carbon and which sale was held on the 16th day of July, 2009, for the purpose of liquidating assessment of *the attached described parcel of land*, situated in the County of Carbon, State of Montana, was duly offered for sale; that there was no purchaser in good faith for the same as provided by law and no person or purchaser offered to take the same and pay the taxes, costs, and charges due as aforesaid. Accordingly, *the whole amount of the property assessed and described as attached* was struck off to the County of Carbon as purchaser thereof and the same still remaining unredeemed, and on the 16th day of July, 2009 having paid unto the Treasury of such County, the amount for which the same was bid, together with all subsequent delinquent taxes, penalties, costs and interest amount in all to $1,581.44.  [Emphasis added.]

Attached to the Untitled Document was a document entitled "CARBON COUNTY-Uncollected Taxes with Delinquents with Legals."  The Untitled Document referred to a singular "attached described parcel of land" for which taxes, penalties, costs and interest in the total amount of $1,581.44 were owed, but the attached document listed

---

[2] "Struck off to the county" is common parlance to indicate that the county was the purchaser of the tax lien.  It is also occasionally used statutorily.  *See* § 15-17-317, MCA (describing property "that has been struck off to the county at a tax lien sale under 15-17-214").

6

seven properties, one of which was identified under the name of Donna L. Anderson, for which taxes, penalty and interest in the amount of $1,304.10 was listed. The Untitled Document also stated that "the whole amount of the property assessed and described as attached" was struck off to the County for payment of $1,581.44, yet the seven properties on the attached document listed a greater total amount of delinquent taxes, penalties and interest. The Untitled Document continued:

> Now, therefore, in consideration thereof and pursuant to the statute in such case made and provided, I do hereby assign and set over the right, title, and interest of the County of Carbon, State of Montana, acquired in such lands under and by virtue of the sale to Zinvest, LLC. . . .

¶12 The second document, entitled Assignment of Tax Sale Certificate, was prepared on September 19, 2011, and included a legal description of Anderson's property. The assignment certified that a tax lien sale had been held in 2009, the lien had failed to sell, and "the county was listed as the purchaser as required by 15-17-214, MCA." As of this date, the delinquency amounted to $4,410.47, and Carbon County was assigning all its rights, title, and interest "to proceed to obtain a tax deed to the property or receive payment in case of redemption" to Zinvest.

¶13 Zinvest argues that the Untitled Document and attached listing of properties, including Anderson's, satisfied the procedural requirements under subsection -214(2)(b) for recording tax liens struck off to the county. Zinvest further argues that the second document satisfied the tax lien sale certificate requirements of subsection -212 and that the District Court was confused about the role of this document due to the mistaken reference in its title to "*Assignment of* Tax Sale Certificate." (Emphasis added.)

7

¶14 There are a number of flaws in Zinvest's positions. First, although the Untitled Document does state that "property assessed and described as attached" was "struck off" to the County, it also refers to a singular "attached described parcel of land" on which $1,581.44 was apparently owed. Thus, it is not clear if the document is attempting to refer to one property or to multiple properties. If to one, the $1,581.44 does not correspond to the amount listed as owed for Anderson's property on the attached listing, and a calculation demonstrating that connection is not provided. Nor is Anderson's property individually identified in the Untitled Document. If to multiple, then the $1,581.44 does not correspond to the total owed for all the listed properties. Further, if this is the document recording the County as purchaser, it confusingly purports to also transfer the property to Zinvest, again, without clearly identifying the property transferred.

¶15 As to the second document, Zinvest argues that, despite the "Assignment of" language in the title, it is actually a Tax Sale Certificate that satisfies the requirements of subsection -212. However, Zinvest was not the purchaser at the tax lien sale and thus was not entitled to receive a tax lien sale certificate. As the second document states, "there was no purchaser of the property tax lien" and "the county was listed as purchaser." This document is an assignment of the County's interest in a tax lien after it has taken the interest as purchaser, pursuant to § 15-17-323, MCA ("A tax lien sale certificate or other official record in which the county is listed as the purchaser must be assigned by the county treasurer to any person who . . . pays to the county the amount of

8

the delinquent taxes, including penalties, interest, and costs. . . .”). In apparent recognition of the problem with its argument, after arguing in its opening brief and before the District Court that "[n]o one purchased the lien at the tax sale, so Carbon County acquired the lien," Zinvest has changed its argument in its reply brief, arguing that "Zinvest, however, was the purchaser at the tax sale . . . ." That would appear to re-posture the Untitled Document as a tax lien sale certificate, and the second document as a true assignment, as it states. However, the Untitled Document fails to include several of the items of information required for tax lien sale certificates under subsection -212, and thus cannot satisfy the requirements for such a document. In any event, the record does not support the factual contention that Zinvest was a purchaser at the tax lien sale.

¶16 We have "firmly maintained the position that procedural requirements set forth in tax deed statutes must be strictly observed." *Isern*, ¶ 10 (citing *Lowery v. Garfield Cnty.*, 122 Mont. 571, 208 P.2d 478 (1949); *Hudson v. McDonald*, 229 Mont. 426, 747 P.2d 221 (1987); *Spain-Morrow Ranch, Inc. v. West*, 264 Mont. 441, 872 P.2d 330 (1994); *Tax Lien Services v. Hall*, 277 Mont. 126, 919 P.2d 396 (1996)). Such exacting scrutiny is a necessity, as tax deed sales involve a citizen's right to property being challenged by the government and can result in the loss of property at well below its full value. As the District Court noted in this case, we thus require "punctilious compliance with all statutory and procedural requirements" because of the interests at stake. *Isern*, ¶ 10.

¶17   As explained herein, the documents used in this transaction contain a number of errors that violated the tax deed statutes and created considerable confusion in the property titling process.   The District Court correctly entered judgment in favor of Anderson.

¶18   Affirmed.


                                    /S/ JIM RICE

We concur:

/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA